**TELINK, INC.; Burnup & Sims, Inc., Petitioners–Appellants,**

v.

**UNITED STATES of America, Respondent–Appellee,**

**County of Fresno, County of San Diego, Intervenors–Appellees.**

No. 93–50034

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 30, 1993.

Decided May 13, 1994.

James G. Thomas and James F. Neal, Neal & Harwell, Nashville, TN; Donald McGrath, II and Peter J. Hughes, San Diego, CA, for petitioners-appellants.

David P. Curnow, Asst. U.S. Atty., San Diego, CA, for respondent-appellee.

Ian Fan, Deputy County Counsel, San Diego, CA, for intervenors-appellees.

Before: TANG, CANBY, and BEEZER, Circuit Judges.

Opinion by Judge BEEZER.

BEEZER, Circuit Judge:

Two corporate defendants petitioned the district court for a writ of error coram nobis, alleging that the indictment to which they pled nolo contendere failed to state a criminal offense. The corporations sought dismissal of the indictment and return of restitution and monetary fines. The district court denied the petition on a theory of laches and, alternatively, on the conclusion that certain counts in the indictment continued to state a criminal offense. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

**I**

Telink, Inc. ("Telink"), a California corporation, Burnup & Sims, Inc. ("Burnup"), a Delaware corporation, and other individual defendants were involved in the sale of telecommunications goods and services to private firms and the Counties of San Diego and Fresno between 1978 and 1984. On October 26, 1984, the government charged the defendants with a pervasive pattern of private and public corruption in a forty-nine count indictment. The indictment alleged racketeering activity for the purpose of inducing the purchase of telecommunications equipment from Telink. Among the acts alleged in the indictment were the payment of bribes and sexual favors, pandering, money laundering, and influence peddling. The indictment charged some defendants, including Telink and Burnup, with mail and wire fraud. In pertinent part, the indictment charged that the defendants fraudulently obtained money and property from San Diego and Fresno Counties, and deprived the counties of the "honest and faithful services of their employees," by use of the mails and wires.

In 1986, the corporate defendants pled nolo contendere to some of the counts. Telink pled nolo contendere to Counts 3 through 46. Burnup pled nolo contendere to Counts 3, 11, 43, and 46. Counts 3 through 40 charged mail fraud (18 U.S.C. § 1341); Counts 41 and 42 charged wire fraud (18 U.S.C. § 1343); Count 43 charged interstate transportation of money taken by fraud (18 U.S.C. § 2314); Counts 44 and 45 charged

interstate travel in aid of racketeering and bribery (ITAR-bribery) (18 U.S.C. § 1952); and Count 46 charged use of an interstate facility (the mails) in aid of racketeering and bribery (18 U.S.C. § 1952).

The court sentenced Telink to pay a total of $28,000 in fines: $10,000 for Count 43, $10,000 for Count 44, and $8,000 for Count 45. Telink received five years probation on the remaining counts. Burnup was ordered to pay a $22,000 fine: $1,000 for Count 3, $1,000 for Count 11, $10,000 for Count 43, and $10,000 for Count 46. Burnup also was ordered to pay $950,000 in costs of prosecution, $3.5 million to the County of San Diego as restitution and settlement of a civil suit, and $300,000 to the County of Fresno as restitution and settlement of a civil suit. The sentences of both corporate defendants included terms of no further investigation or prosecution.

As for the individual defendants, some pled guilty; others went to trial on a redacted indictment in March 1987. The redacted indictment contained the following twenty-one counts excerpted from the original indictment: 7, 10 through 19, 23, 25, 26, 31, 33 through 38. All charged mail fraud.

In the midst of trial on the redacted indictment, the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). *McNally* directly affected the issues at trial, holding that the mail fraud statute (18 U.S.C. § 1341) is limited in scope to the protection of property rights and does not recognize the right to have the government's affairs conducted honestly.[1] 483 U.S. at 356, 107 S.Ct. at 2879. The sufficiency of the redacted indictment which alleged that the Counties of San Diego and Fresno had been deprived of the "honest and faithful service of its employees" was challenged by the individual defendants. On July 28, 1987, the district court declared a mistrial in the cases of the remaining individ-

ual defendants. On March 24, 1988, the district court denied a motion to dismiss the redacted indictment. *United States v. Telink, Inc.*, 681 F.Supp. 1454 (S.D.Cal.1988) (*"Telink I"*). In December 1988, on multiple motions to reconsider, the district court reversed itself and dismissed the indictment against the individual defendants. *United States v. Telink, Inc.*, 702 F.Supp. 805 (S.D.Cal.1988) (*"Telink II"*). We affirmed in *United States v. Telink, Inc.*, 910 F.2d 598 (9th Cir.1990) (*"Telink III"*).

On June 15, 1992, 18 months after the dismissal of the redacted indictment and nearly five years after the decision in *McNally*, Telink and Burnup filed this petition for writ of error coram nobis. Pursuant to written stipulations, San Diego County and Fresno County intervened as party-respondents. The petitioners alleged that *McNally* voided the indictment to which they pled nolo contendere and therefore sought to have their convictions set aside. The district court concluded that the petitioners' claim was barred by laches. The court reasoned that even if laches did not apply, the counts to which Telink and Burnup pleaded nolo contendere were not voided by *McNally*.

## II

■ The government contends that Telink has no standing because the California corporation is no longer an operating entity. Both parties agree that Telink is a "defunct" corporation. The government argues that a "defunct" corporation, like a dead person, cannot seek coram nobis relief. When no material facts are in dispute, we review questions of standing *de novo*. *United States v. Salazar*, 805 F.2d 1394, 1396 (9th Cir.1986).

■ We reject the government's contention that Telink has no standing. Although not currently operating, Telink has not undergone corporate dissolution. Under California law,[2] a corporation may be dissolved in

---

1. In November 1988, Congress statutorily overruled *McNally*, stating: "For the purpose of this chapter, the term 'scheme or artifice to defraud' includes a scheme and artifice to deprive another of the intangible right of honest services." Pub.L. 100–690, Title VII, § 7603(a), 102 Stat. 4508.

2. When a California corporation is charged with federal offenses, we look to the state's corporate law to determine its existence and status. *See United States v. Polizzi*, 500 F.2d 856, 907 (9th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 803, 42 L.Ed.2d 820 (1975).

only two ways: through a court order for an involuntary dissolution proceeding, Cal.Corp. Code § 1808(a), (b) (1990), or through the filing of a certificate of dissolution with the Secretary of State in a voluntary proceeding, Cal.Corp.Code § 1905(a), (c) (Supp.1994). Neither step has been taken. Telink therefore remains a corporate entity. Telink has standing.

### III

We next address the district court's dismissal of the petition for writ of coram nobis based on the doctrine of laches.

 The writ of error coram nobis affords a remedy to attack an unconstitutional or unlawful conviction in cases when the petitioner already has fully served a sentence. *United States v. Walgren,* 885 F.2d 1417, 1420 (9th Cir.1989). The petition fills a very precise gap in federal criminal procedure. A convicted defendant in federal custody may petition to have a sentence or conviction vacated, set aside or corrected under the federal habeas corpus statute, 28 U.S.C. § 2255. *United States v. Hayman,* 342 U.S. 205, 207, 72 S.Ct. 263, 266, 96 L.Ed. 232 (1951). However, if the sentence has been served, there is no statutory basis to remedy the "lingering collateral consequences" of the unlawful conviction. *Yasui v. United States,* 772 F.2d 1496, 1498 (9th Cir.1985). Recognizing this statutory gap, the Supreme Court has held that the common law petition for writ of error coram nobis is available in such situations, even though the procedure authorizing the issuance of the writ was abolished for civil cases by Fed.R.Civ.P. 60(b). *United States v. Morgan,* 346 U.S. 502, 505 n. 4, 74 S.Ct. 247, 249 n. 4, 98 L.Ed. 248 (1954). District courts are authorized to issue the writ pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (1994). *Morgan,* 346 U.S. at 506, 74 S.Ct. at 250, *Walgren,* 885 F.2d at 1420.

 Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations.[3] *Morgan,* 346 U.S. at 507, 74 S.Ct. at 250 (coram nobis petition allowed "without limitation of time"); *Hirabayashi v. United States,* 828 F.2d 591, 605 (9th Cir.1987). Rather, the petition is subject to the equitable doctrine of laches. *See id.* at 605; *United States v. Darnell,* 716 F.2d 479, 480 (7th Cir.1983), *cert. denied,* 465 U.S. 1083, 104 S.Ct. 1454, 79 L.Ed.2d 771 (1984). Unlike a limitations period, which bars an action strictly by time lapse, laches bars a claim if unreasonable delay causes prejudice to the defendant.[4] *International Tel. & Tel. Corp. v. General Tel. & Elecs. Corp.,* 518 F.2d 913, 926 (9th Cir.1975). "[L]aches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or parties." *Holmberg v. Armbrecht,* 327 U.S. at 396, 66 S.Ct. at 584.

 In the absence of a specific limitations period, however, a court may draw on an analogous statute of limitations in determining whether laches may apply within a given period. *International Tel. & Tel. Corp.,* 518 F.2d at 926, 928. A statute is analogous when it relates to actions at law of "like character" and remedies the same set of substantive rights. *Id.* Laches is rarely justified if the claim is filed before the analogous statute of limitations expires. *Bouman v. Block,* 940 F.2d 1211, 1227 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991) (application of laches before expiration of analogous limitations period is "extremely rare") (quoting *Shouse v. Pierce County,* 559 F.2d 1142, 1147 (9th Cir.

---

**3.** Generally speaking, if Congress has provided a specific limitations period, a court should not apply laches. In such cases, "[t]he Congressional statute of limitations is definitive," *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946), and a petitioner "may do what he likes as long as he brings his suit within the stipulated period." *Royal Air Properties, Inc. v. Smith,* 312 F.2d 210, 214 (9th Cir.1962).

**4.** The word "laches" is from the Old French lasche ("lax"), which was a shorthand expression for the equity maxim that one who seeks the help of a court of equity must not sleep on his rights. *Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 939 (7th Cir.1984) (Posner, J., concurring) (citing 2 Pomeroy, A Treatise on Equity Jurisprudence 169–81 (5th ed. 1941)).

1977); *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986) (if action is brought before end of analogous limitations period, delay is presumptively reasonable and "[o]nly rarely should laches bar a case before the analogous statute has run.").[5]

### A.

Telink and Burnup contend their petition is analogous to a civil action governed by the six-year statute of limitations in 28 U.S.C. § 2401 (Supp.1994): "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The petitioners' right to challenge their convictions accrued when *McNally* was decided in 1987. Because Telink and Burnup filed their claim four years and 363 days after *McNally*, well within the limitations period of section 2401, the petitioners contend their delay is presumptively reasonable. The essence of their argument is that a court should not, except rarely, apply laches to a petition unless at least six years have elapsed from the accrual of a right of action. Whether a suit is governed by an analogous limitations period is a legal conclusion that we review *de novo. See Int'l Tel. & Tel. Corp.*, 518 F.2d at 926.

■ We do not view a civil action under section 2401 to be analogous to a petition for the writ of coram nobis. Section 2401 expressly applies only to civil actions, not criminal cases. *Werner v. United States*, 188 F.2d 266, 268 (9th Cir.1951). In contrast, a petition for the writ of error coram nobis is a step in the original criminal proceedings, not the beginning of a separate civil action. *Yasui*, 772 F.2d at 1499.[6] A petitioner resorting to the coram nobis petition seeks to vacate a wrongful criminal conviction; this right differs inherently from the types of substantive rights typically sought by plaintiffs in purely civil actions. The coram nobis petition and a civil action are not "of like character." We consequently decline to adopt by analogy the limitations period in section 2401.[7]

Telink and Burnup note the Third Circuit has applied section 2401's limitations period to the coram nobis petition, and urge us to do the same. *See United States v. Sams*, 521 F.2d 421, 428–29 (3d Cir.1975). We do not find *Sams* persuasive. *Sams* held that a petitioner who reverses his conviction cannot obtain a refund of wrongly paid fines unless he also pursues a separate civil action against the government under the Tucker Act, subject to section 2401's limitations period. *Id.* at 428. We reject the notion that a coram nobis petitioner must file a Tucker Act claim to recover fines or restitution that stem from a wrongful conviction. We agree with the Fifth Circuit's holding that the recovery of wrongly paid fines is "incident to the vacat-

---

5. For an example of one rare case, *see Alsop v. Riker*, 155 U.S. 448, 460–61, 15 S.Ct. 162, 166–67, 39 L.Ed. 218 (1894). The application of laches before an analogous statute of limitations rests on the proposition that laches is justified by the petitioner's lack of diligence and prejudice to the opposing party, and not merely time lapse. If the defendant can show harm from the delay, the court may, in extraordinary circumstances, defeat the claim based on laches, though the claim is within the analogous limitations period. *See* Dan B. Dobbs, Handbook on the Law of Remedies 43–4 (1973).

6. *But see Neely v. United States*, 546 F.2d 1059, 1066–67 (3d Cir.1976) (petition for coram nobis is "civil" in nature); *United States v. Balistrieri*, 606 F.2d 216, 220–21 (7th Cir.1979) ("[A] coram nobis motion is a step in the criminal proceedings yet is, at the same time, civil in nature and subject to the civil rules of procedure."), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). These holdings, contrary to *Yasui*, are based on a different interpretation of *United States v. Morgan*, 346 U.S. at 505 n. 4, 74 S.Ct. at 249 n. 4. *See Yasui*, 772 F.2d at 1500 (Wallace, J., dissenting).

7. Were we to rely on an analogous civil statute, a more appropriate model would be a motion to vacate under 28 U.S.C. § 2255, which the Supreme Court has described as having the "same general character" as a coram nobis petition. *United States v. Morgan*, 346 U.S. at 506 n. 4, 74 S.Ct. at 249 n. 4. Section 2255 allows a petitioner to seek relief "at any time," precluding any strict limitations period, but also permits the application of laches. *See United States v. Gutierrez*, 839 F.2d 648, 650 (10th Cir.1988). If relief under section 2255, which is civil in nature, is exempt from section 2401's time limitation, we see little justification for applying section 2401 to the non-civil coram nobis petition.

ing and setting aside" of the wrongful conviction. *United States v. Lewis,* 478 F.2d 835, 836 (5th Cir.1973).[8] If Telink and Burnup prevail in setting aside their convictions, the wrongly paid fines would be automatically refunded, without requiring a civil action and without regard to the limitations period for civil actions.[9]

■ In concluding that the coram nobis petition will not be subject to an arbitrary limitations period, we instead adopt a "flexible, equitable time limitation" based on laches. *Darnell,* 716 F.2d at 480. A district court is free at any time to apply laches to a coram nobis petition, if the petitioner inexcusably delays in asserting his claims and the government is prejudiced by the delay. *Id. See also United States v. Moore,* 166 F.2d 102, 105 (7th Cir.) ("In the absence of an applicable statute expressly providing limitation, apparently there is no limitation of time within which a writ of error coram nobis ... may be filed, except that an applicant must show reasonable diligence in presenting his claim."), *cert. denied,* 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772 (1948). In requiring reasonable diligence at all times, our holding ensures a petitioner will not use an analogous limitations period as a safe haven for prejudicing the government, willfully delaying the

assertion of his or her rights and then raising the claim after the inexcusable delay has impaired the government's ability to respond to the allegations or to proceed to retrial. *See id.; Darnell,* 716 F.2d at 481 n. 5.

**B.**

■ We next decide whether the district court's dismissal of the petition on the basis of laches was proper under the circumstances. We review the district court's application of laches for abuse of discretion.[10] ·*See Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 515 (9th Cir.), *cert. denied,* 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989).[11]

The district court concluded that in order for laches to bar the petitioners' claim, the government first must make a prima facie showing of prejudice as a result of Telink's delay. If the government meets that burden, the burden of production of evidence then shifts to the petitioners to show either that the government actually was not prejudiced or that the petitioner exercised reasonable diligence in filing the claim. *See Harris v. Pulley,* 885 F.2d 1354, 1366 (9th Cir.1988) (writ of habeas corpus under 28 U.S.C. § 2254), *cert. denied,* 493·U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990); *United States v.*

8. As the *Lewis* court explained
 We can see no reason why a person who has paid a fine pursuant to an unconstitutional statute should be required to resort to a multiplicity of actions in order to obtain reimbursement of money to which he is entitled. Since the district court was empowered to set aside the conviction, it could also correct the unlawful result of the conviction and require the repayment of the money collected as fines. This it could do without the bringing of another action.... Just as the imposition of a fine is an incident of a criminal conviction, so is the direction for repayment an incident to the vacating and setting aside of the conviction. *Lewis,* 478 F.2d at 836 (citations omitted).

9. Of course, when the petitioner's claimed monetary loss stems not from the sentence itself but, rather, is a collateral consequence of the conviction, a separate civil action is necessary in order to receive damages. *Compare O'Callahan v. Parker,* 395 U.S. 258, 274, 89 S.Ct. 1683, 1691, 23 L.Ed.2d 291 (1969) (reversal of 1956 court martial conviction via habeas corpus petition), *overruled by Solario v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), *with O'Callahan v. United States,* 451 F.2d 1390, 1394,

196 Ct.Cl. 556 (1971) (damages claim relating to loss of military pay due to 1956 conviction was barred by six-year statute of limitations).

10. Telink and Burnup argue that a *de novo* standard of review applies to the denial of a petition. They are correct only insofar as that is the proper standard for reviewing the denial of a petition on the *merits. See Walgren,* 885 F.2d at 1420. However, when a petition is dismissed on laches, we review for an abuse of discretion.

11. We also have invoked the "clearly erroneous" standard in laches cases. *See Tagaropulos, S.A. v. S.S. Santa Paula,* 502 F.2d 1171 (9th Cir. 1974). *Cf. Piper Aircraft Corp. v. Wag–Aero, Inc.,* 741 F.2d at 937–41 (Posner, J., concurring) (noting conflict between "abuse of discretion" standard and "clearly erroneous" standard and arguing that latter is more appropriate).

For purposes of this appeal, any distinction that may exist between the two standards is immaterial. *Cf. Clamp Manufacturing,* 870 F.2d at 515 (district court did not abuse its discretion because its factual findings were not clearly erroneous).

*Darnell,* 716 F.2d at 480–81 (writ of error coram nobis); Rules Governing § 2255 Proceedings, 28 U.S.C. § 2255, Rule 9(a), 28 U.S.C. foll. § 2255.

■ In making a determination of prejudice, the effect of the delay on both the government's ability to respond to the petition and the government's ability to mount a retrial are relevant. *See Darnell,* 716 F.2d at 480. The district court found that the government was prejudiced in both respects because: (1) the indictment alleged activity more than eight years old; (2) the government's witnesses and their memories have been out-of-touch with this case for a substantial period of time; (3) one government witness, Mr. St. Pierre, had died; (4) the government's data base would require difficult and expensive reassembling; (5) the government's prosecution team had been disassembled; (6) the Counties of San Diego and Fresno would be severely affected if required to refund the $3.8 million paid in restitution they received as part of the plea agreement.

Telink and Burnup argue that their delay caused no prejudice because the government would not have pursued reprosecution anyway until it knew the outcome of the appeal in *Telink III,* which we decided in early 1991. Second, Telink and Burnup argue that the death of the government witness, Mr. St. Pierre, was not prejudicial because St. Pierre did not become a witness until after Telink's conviction. Third, Telink and Burnup argue that requiring the Counties of San Diego and Fresno to refund the fines is not a form of prejudice, as the impact of collateral relief has nothing to do with whether the government can prove its case.

■ We agree with the petitioners' argument that the burden against the counties was not a permissible basis for finding prejudice. However, we do not believe the district court's other findings of fact were clearly erroneous. But for the petitioner's delay, the government would have preserved its case, reprosecution (if necessary) would have occurred earlier, and Mr. St. Pierre might have been alive to testify. The only reason Mr. St. Pierre was not a witness against Telink and Burnup in the first prosecution was because the two corporations' nolo contendere pleas made trial unnecessary. The district court did not clearly err in accepting the government's contention that Mr. St. Pierre would have testified against Telink and Burnup in a trial.

■ The undisputed facts of this case show that Telink and Burnup waited nearly five years to assert their rights. Despite this delay, Telink and Burnup contend they acted with reasonable diligence. Telink and Burnup argue that they were reasonable in waiting to bring this petition because the merits of the petition ultimately depended on how the appeal in *Telink III* turned out. In essence, Telink and Burnup did not wish to assert their claims until they were convinced their case had merit.

The district court found that Telink and Burnup failed to exercise reasonable diligence in asserting their claims. It held that Telink and Burnup should have commenced post-conviction relief proceedings "at least as early as late 1988." We agree. The petitioners learned in 1987, when *McNally* was decided, that the indictment under which they were convicted was tainted with *McNally* problems. Telink and Burnup heard the alarm but chose instead to sleep. The strategic decision to rest, to minimize the legal expense and to let others carry the litigation burden, hardly excuses their delay. *Cf. Hirabayashi v. United States,* 828 F.2d at 605 (Japanese–American's 40-year delay in attacking wartime curfew conviction was justified because an exculpatory document, although a matter of public record, had escaped the eye of professional historians as well as the petitioner). Even after our affirmance in *Telink III,* Telink and Burnup waited an additional year and a half before finally petitioning the district court for a writ of error coram nobis. The district court did not abuse its discretion in applying laches.

The judgment of the district court dismissing the petition for writ of error coram nobis is AFFIRMED.