**Richard E. JOHNSON, 228 83 1197, Lance Corporal (E–3), U.S. Marine Corps, Petitioner,**

v.

**UNITED STATES, Respondent.**

**NMCM 9801076.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

22 Dec. 1998.

David P. Sheldon, Civilian Defense Counsel.

Capt. Paul D. Kovac, USMC, Appellate Government Counsel.

ANDERSON, Judge:

The petitioner requests that this court afford him extraordinary relief in the nature of a writ of error *coram nobis* for the improper execution of the bad-conduct discharge and forfeitures of pay awarded him by a special court-martial conducted in 1968.[1] He asks this court to set aside his discharge and award him back pay. We hold that extraordinary relief is not available where the petition: (1) fails to describe an error of a fundamental character; (2) is submitted before the exhaustion of another authorized means of administrative review; (3) fails to demon-

strate what lingering civil disabilities the petitioner continues to suffer as a result of his conviction; and (4) is barred by the doctrine of laches. Therefore, we deny relief.

## FACTS

On 18 September 1968, pursuant to his pleas, the petitioner was found guilty of one specification of unauthorized absence in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 (1964). A panel of officer members, sitting as a special court-martial, sentenced him to confinement for 6 months, forfeiture of $97.00 pay per month for 6 months, reduction to pay grade E–1, and a bad-conduct discharge. In adjudging the sentence, the panel considered that the petitioner had one previous special court-martial conviction.

On 12 November 1968, the convening authority (Colonel Thomas L. Randall, USMC, Commanding Officer, Staging Battalion, Marine Corps Base (MCB), Camp Pendleton) approved the sentence, but reduced the amount of forfeiture to $73.00 pay per month for 6 months. Over a month later, on 19 December 1968, the same convening authority, but a different officer (Lieutenant Colonel G.E. Ferguson, USMC), attempted to modify the initial convening authority's action by suspending the confinement, forfeiture, and discharge portions of the sentence for a period of 12 months.

On 16 January 1969, the Staff Judge Advocate (SJA), MCB, Camp Pendleton, provided the officer exercising general court-martial jurisdiction (OEGCMJ)(Commanding General, MCB, Camp Pendleton) with a review of the petitioner's court-martial. In this review, he informed the OEGCMJ that the adjudged sentence was "discharge from the service with a bad conduct discharge, confinement at hard labor for 6 months and forfeiture of $97.00 pay per month for 6 months and reduction to pay grade E–1." Staff Judge Advocate's Review of 16 January 1969. In addition, he told the OEGCMJ that the convening authority had approved "only so much of the sentence as provides for a bad

---

1. Issue presented: Was it unlawful to execute petitioner's bad-conduct discharge and impose

forfeitures where the convening authority had suspended those two parts of the sentence?

conduct discharge, confinement at hard labor for 6 months and forfeiture of $73.00 pay per month for 6 months and reduction to pay grade E–1." *Id.* No mention was made of the convening authority's substituted action of 19 December 1968. The SJA then recommended that the approved sentence be approved by the OEGCMJ.[2] In an action dated 20 January 1969, the OEGCMJ approved "the sentence as approved by the convening authority." The promulgating order for the case then announced the charge, pleas, findings, sentence adjudged, convening authority's action of 12 November 1968, and OEGCMJ's action of 20 January 1969. Again, no mention was made in this order of the convening authority's substituted action of 19 December 1968.

In early April 1969, the case was submitted without assignment of error to this court's predecessor, the U.S. Navy Board of Review. On 11 April 1969, the board affirmed both the findings and the sentence as had been approved on review below. No appeal was taken to the Court of Military Appeals. On 13 November 1969, the petitioner waived his right to request restoration to duty and requested the execution of his bad-conduct discharge.[3] On 17 November 1969, the OEGCMJ issued a supplementary promulgating order in which he stated that "the sentence to Bad Conduct Discharge, confinement at hard labor for six months and forfeiture of $73.00 per month for six months, and reduction to the grade of pay grade E–1" as promulgated in his earlier order had been approved by the Board of Review. Accordingly, he ordered the bad-conduct discharge executed. No mention was made of the convening authority's substituted action of 19 December 1968.

Now, almost 30 years after the case was tried, the petitioner contends that because the convening authority had suspended the bad-conduct discharge and forfeitures in a substituted action, those punishments were improperly executed without a vacation hearing required by Article 72, UCMJ.

## DISCUSSION

In *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), the U.S. Supreme Court held that the ancient writ of *coram nobis* was available in criminal cases in the federal courts pursuant to the All Writs Act, 28 U.S.C. § 1651(a)(1949) as an avenue of collateral attack when the petitioner had completed his sentence and was no longer in custody for purposes of seeking habeas corpus relief. The use of the writ, however, was limited, to correct errors only "of the most fundamental character." *Id.* at 512, 74 S.Ct. 247 (quoting *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129 (1914)). In addition, the writ would lie "only under circumstances compelling such action to achieve justice," where "no other remedy [was] then available," "sound reasons exist[ed] for failure to seek appropriate earlier relief," and "the results of the conviction may persist." *Id.* In military practice, the Court of Appeals for the Armed Forces has determined that the writ of *coram nobis* is a procedure available under the All Writs Act "to remedy errors not perceived or not fully assessed when the case was first before it." *See Del Prado v. United States,* 23 C.M.A. 132, 133, 48 C.M.R. 748, 749, 1974 WL 13907 (1974). That court summarized the nature of the writ as follows:

> *Coram nobis* is not a substitute for an appeal. It is extraordinary relief predicated upon 'exceptional circumstances' not apparent to the court in its original consideration of the case. It may not be used to seek a reevaluation of the evidence or a reconsideration of alleged errors.

*United States v. Frischholz,* 16 C.M.A. 150, 153, 36 C.M.R. 306, 309, 1966 WL 4467 (1966) (citations omitted).

---

2. The exact words of the SJA's review were confusing in light of what he had informed the OEGCMJ of the sentence adjudged and the convening authority's action: "It is recommended that the sentence as approved, ordered executed and partially suspended by the convening authority be approved."

3. In his waiver, the petitioner wrote: "I feel that it is in my best interest to take a Bad Conduct Discharge instead of returning to duty, only to violate the UCMJ again as I have done in the past. My social-pathic personality will not let me fulfill my military obligation."

To be entitled to relief under a writ of *coram nobis,* the petitioner bears the burden of showing that a fundamental error in the proceedings clearly and indisputably entitles him to the relief sought. *Morgan,* 346 U.S. at 512, 74 S.Ct. 247; *Ross v. United States,* 43 M.J. 770, 771 (N.M.Ct.Crim.App.1995); *Aviz v. Carver,* 36 M.J. 1026, 1028 (N.M.C.M.R.1993). After reviewing the entire record, we find that the petitioner has failed to meet his burden.

The petitioner argues that by the convening authority's substituted action of 19 December 1968, his bad-conduct discharge was suspended for a period of 12 months. Because Article 72, UCMJ, requires that a vacation hearing be conducted prior to the execution of a suspended discharge and no such hearing was conducted in this case, the petitioner contends that the execution of the discharge was improper. We disagree.

The procedural rules applicable to this case are those found in the MANUAL FOR COURTS-MARTIAL, UNITED STATES (1951 ed.).[4] Paragraph 89b of that Manual provides that the convening authority may recall and modify "any action taken by him at any time before it has been published or the accused has been officially notified thereof." MCM, Part IV, ¶ 89b. As a result of this language, once the convening authority had published his action or had officially notified the accused about it, he lost jurisdiction over the case. *See United States v. Montesinos,* 28 M.J. 38, 42 (C.M.A.1989). Because in this case the initial convening authority's action indicates on its face that on 12 November 1968 it was forwarded to the Commanding General, Marine Corps Base, Camp Pendleton, and copies were provided to the Commanding Officer, Headquarters and Service Company and to the Base Brig, we may presume that the action was officially published prior to the convening authority's substituted action dated 19 December 1968. Consequently, the convening authority had no authority to issue a substituted action, and it was a nullity. Thus, when the OEGCMJ ordered the bad-conduct discharge executed on 19 November 1969 after the findings and sentence had been affirmed by this court's predecessor and after the petitioner had waived his right to restoration and requested the execution of the discharge, no error was committed. In a nutshell, a vacation proceeding was not required because the discharge had never been properly suspended.

Furthermore, the petitioner has failed to identify any " 'exceptional' circumstances not apparent to the court in its original consideration of the case" to justify relief. *Frischholz,* 16 C.M.A. at 153, 36 C.M.R. at 309 (quoting *United States v. Tavares,* 10 C.M.A. 282, 284, 27 C.M.R. 356, 358, 1959 WL 3628 (1959)). A writ of *coram nobis* "is not intended to enable a petitioner to restart the appellate process after it has been properly completed." *Nkosi v. Lowe,* 38 M.J. 552, 553 (A.F.C.M.R.1993). Here, the substituted convening authority's action was contained within the record of trial, yet neither the SJA's review of this case nor the promulgating order referred to it. If the appellate defense counsel considered the substituted action to be anything more than a nullity, both the SJA's review and the promulgating order should have been challenged. The failure of the SJA's review or the promulgating order to mention the substituted action, the appellate counsel to assign it as an error, and the Board of Review to comment upon it, is clear evidence that the substituted action was recognized for what it was, a nullity. Because the alleged error should have been readily apparent at the time the Board of Review considered this case, it does not now merit *coram nobis* relief.

Even assuming *arguendo* that the petitioner had demonstrated a fundamental error not readily apparent at the time, three other reasons exist not to grant him relief.

First, the writ of *coram nobis* is not available "where other authorized means of appeal or administrative review exist."

4. *See* Exec. Order No. 10,214, 3 C.F.R. 408 (1949–1953). The MANUAL FOR COURTS-MARTIAL, UNITED STATES (1969 ed.) was applicable to trials in which the accused was arraigned between 1 January 1969 and 31 July 1969, and the MANUAL FOR COURTS-MARTIAL, UNITED STATES (1969 Rev. ed.) was applicable to trials begun after 1 August 1969. *See* Exec. Order No. 11,430, 3 C.F.R. 749 (1966–1970) and Exec. Order No. 11,476, 3 C.F.R. 802 (1966–1970).

*Ross,* 43 M.J. at 771. In this case, petitioner could have applied for a correction of his record with the Board for Correction of Naval Records (BCNR). 10 U.S.C. § 1552 (1994); *see also Baxter v. Claytor,* 652 F.2d 181, 185 (D.C.Cir.1981)(holding that BCNR has "the power to remove all traces of an invalid court martial from a serviceman's record and to change a dishonorable discharge into an honorable one"); *Ballenger v. Marsh,* 708 F.2d 349, 350 (8th Cir.1983). Although BCNR applications generally must be filed within 3 years after discovery of the error, the Board may excuse the failure to file within this time period "in the interest of justice." 10 U.S.C. § 1552(b); 32 C.F.R. § 723.3(b)(1998). In failing to submit an application to the BCNR and to await its action, the petitioner failed to exhaust his administrative remedies. As a result, the writ of *coram nobis* is not available while this authorized means of administrative relief exists.

■■■ Second, we find that the petitioner has failed to allege a continuing civil disability in order for the writ to issue. In *Morgan,* 346 U.S. at 512, 74 S.Ct. 247, the Supreme Court commented that the writ would lie where "the results of the conviction may persist." In view of this language, the First, Second, Third, Fifth, Seventh, and Eighth Circuit Courts of Appeal have held that *coram nobis* petitioners are required to demonstrate an ongoing civil disability resulting from the alleged trial error. *Hager v. United States,* 993 F.2d 4, 5 (1st Cir.1993); *Fleming v. United States,* 146 F.3d 88, 91 (2d Cir.1998); *United States v. Stoneman,* 870 F.2d 102, 106 (3d Cir.1989); *United States v. Marcello,* 876 F.2d 1147, 1154 (5th Cir.1989); *United States v. Craig,* 907 F.2d 653, 657–58 (7th Cir.1990), *Stewart v. United States,* 446 F.2d 42, 43–44 (8th Cir.1971). *But cf. United*

*States v. Mandel,* 862 F.2d 1067, 1075 n. 12 (4th Cir.1988) (implying that injury would be presumed on the fact of conviction); *Hirabayashi v. United States,* 828 F.2d 591, 606 (9th Cir.1987)(suggesting that collateral consequences would be presumed from criminal conviction). Although our superior court has not decided this issue, in view of the federal court precedent, we conclude that the petitioner must allege an ongoing collateral consequence emanating from the trial error. This consequence must cause a present harm, arise out of the conviction, and be more than incidental. *Craig,* 907 F.2d at 658. Because the petitioner here has failed to allege any particular lingering civil disability that would support the issuance of a writ of *coram nobis,* we find that the writ does not lie.[5]

■■■ Third, we find that the petitioner's claim is barred by the doctrine of laches. In *Morgan,* 346 U.S. at 512, 74 S.Ct. 247, the Supreme Court concluded that *coram nobis* petitioners had to demonstrate that "sound reasons exist[ed] for failure to seek appropriate earlier relief." These words imply that timeliness should be a factor in determining whether to grant *coram nobis* petitions. Although our superior court has not decided this specific question,[6] numerous federal circuit courts of appeal have found that *coram nobis* relief could be barred if a petitioner delayed too long in bringing the claim. *Hager,* 993 F.2d at 5; *Foont v. United States,* 93 F.3d 76, 78–80 (2d Cir.1996). *United States v. Dyer,* 136 F.3d 417, 429 (5th Cir.1998); *Blanton v. United States,* 94 F.3d 227, 231 (6th Cir.1996); and *United States v. Correa–De Jesus,* 708 F.2d 1283, 1286 (7th Cir.1983); *Telink, Inc. v. United States,* 24 F.3d 42, 45, 47 (9th Cir.1994). Generally, the doctrine of laches bars a claim if there is unreasonable

---

**5.** Although we concede that collateral consequences almost inevitably flow from the receipt of a bad-conduct discharge, we conclude that the petitioner must bear the burden of showing actual, not speculative, harm.

**6.** In a footnote in *Garrett v. Lowe,* 39 M.J. 293 (C.M.A.1994), our superior court commented: "We are unaware that there are time limits for petitioning for a writ of error *coram nobis.*" *Id.* at 295 n. 2; *see also Morgan,* 346 U.S. at 507, 74 S.Ct. 247 (*coram nobis* petition allowed "without

limitation of time.") We do not conclude from this comment that the court was deciding that a writ of error *coram nobis* could not be barred by the doctrine of laches. Although a writ of error *coram nobis* is not subject to a specific statute of limitations, the issuance of the writ may nonetheless be barred by the passage of time depending on the circumstances of the individual case. *See, e.g., Foont v. United States,* 93 F.3d 76, 79 (2d Cir.1996); *Telink, Inc. v. United States,* 24 F.3d 42, 45, 47 (9th Cir.1994).

delay and the government is prejudiced. *See Telink, Inc.,* 24 F.3d at 45, 47. This claim was brought 29 years after the bad-conduct discharge was ordered executed. The petitioner has provided no explanation for the delay. Prejudice to the Government may be presumed: Even if the two convening authorities, the staff judge advocate, and the OEGCMJ could be located, their memories of the review process of this court-martial would undoubtedly have faded in the intervening 29 years. In view of the unjustified delay and the presumed prejudice to the Government, we conclude that the doctrine of laches bars the claim.

## DECISION

Accordingly, the requested relief is denied. The petitioner has failed to demonstrate that justice demands issuance of the writ.

Chief Judge OLIVER and Judge TROIDL concur.