2013 COA 58

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Shannon NELSON, Defendant–Appellant.

Court of Appeals No. 11CA1206

Colorado Court of Appeals, Div. VI.

Announced April 25, 2013

Rehearing Denied June 6, 2013

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Law Office of Suzan Trinh Almony, Suzan Trinh Almony, Broomfield, Colorado, for Defendant–Appellant

Opinion by JUDGE GABRIEL

¶ 1 Defendant, Shannon Nelson, formerly known as Shannon Gonser, appeals from the district court's order denying her motion for a refund of the restitution paid while she was incarcerated in the Department of Corrections (DOC). Addressing an apparent matter of first impression in Colorado, we hold that a defendant whose conviction is overturned on appeal is entitled to seek a refund of the restitution paid in connection with the overturned conviction when the People fail to prove on remand the defendant's guilt of the charged crimes beyond a reasonable doubt (e.g., due to a subsequent acquittal or a decision not to retry the defendant). We further conclude, also as a matter of first

impression, that such a defendant may seek the refund of restitution from the state in his or her criminal case without having to file a separate proceeding.

¶ 2 Accordingly, we reverse the district court's order and remand for further proceedings.

## I. Background

¶ 3 Nelson was charged with forty counts related to the alleged sexual assault and physical abuse of her four children. Following a jury trial, she was convicted on five counts and sentenced to the DOC. The district court also ordered Nelson to pay restitution, court costs, and fees totaling $8192.50, of which $7845 was for restitution.

¶ 4 As pertinent here, the DOC subsequently withheld $681.35 from Nelson's inmate account and applied that sum toward the restitution, fees, and costs. The breakdown contained in Nelson's opening brief indicating how this sum was allocated does not total $681.35, but Nelson asserts that $390.67 of the total amount withheld was applied to the restitution owed.

¶ 5 Nelson appealed her convictions, and a division of this court reversed and remanded for a new trial. *People v. Gonser*, (Colo. App. No. 06CA1023, Apr. 9, 2009) 2009 WL 952492 (not published pursuant to C.A.R. 35(f)). At her second trial, Nelson was acquitted of all of the remaining charges.

¶ 6 Thereafter, Nelson moved for a refund of the restitution, fees, and costs that she paid while in the DOC. The district court, however, concluded that it lacked the authority to order such a refund and denied the motion.

¶ 7 Nelson now appeals.

## II. Discussion

¶ 8 Nelson contends that the district court erred in concluding that it lacked the authority to order a refund of the restitution, fees, and costs that Nelson paid in connection with a conviction that was overturned when she was acquitted after retrial of all of the remaining charges against her. We agree that the district court erred.

## A. Standard of Review

¶ 9 The question of whether the district court had the authority to order a refund of the restitution, fees, and costs that Nelson paid presents a question of law that we review de novo. *See People v. Pino*, 262 P.3d 938, 940 (Colo.App.2011).

## B. Refund of Restitution, Fees, and Costs

¶ 10 The General Assembly has expressed its intent that restitution be awarded to crime victims. § 18–1.3–601(2), C.R.S.2012. Thus, every order of conviction of a felony, among other crimes, shall include consideration of restitution. § 18–1.3–603(1), C.R.S. 2012.

¶ 11 When restitution may be awarded, the prosecution must prove the amount of restitution owed by a preponderance of the evidence. *People v. Pagan*, 165 P.3d 724, 729 (Colo.App.2006). Because of the lower burden of proof for restitution than for a conviction, restitution may be awarded in connection with a criminal conviction for related but uncharged conduct. *Id.* at 731. Similarly, a division of this court has held that when a conviction is abated by operation of law due to the defendant's death, a restitution order issued in connection with that conviction need not also be abated. *People v. Daly*, 313 P.3d 571, 575 (Colo.App.2011).

¶ 12 As the foregoing authorities make clear, restitution must be tied to a valid conviction, even if the amount is based on uncharged conduct that is related to the conduct on which the conviction was based. *See also People v. Brigner*, 978 P.2d 163, 164 (Colo.App.1999) (noting that a defendant may not be ordered to pay restitution for losses that did not result from the conduct that was the basis of his or her criminal conviction). Thus, a division of this court has indicated that when a conviction is reversed and a case is remanded for a new trial, any restitution order imposed in connection with the conviction must be vacated, pending the outcome of the new trial. *See People v. Scearce*, 87 P.3d 228, 235 (Colo.App.2003) (vacating a restitution order in connection with the reversal of a conviction on appeal).

¶ 13 Similarly, fees and costs imposed on a defendant must be tied to a valid conviction. *See* § 13–32–105, C.R.S.2012 (providing for a docket fee and surcharge to be assessed and collected from a defendant upon his or her conviction); § 16–18–101(1), C.R.S. 2012 (providing that the costs in a criminal case shall be paid by the state when the defendant is acquitted); § 24–4.1–119(1)(a), C.R.S.2012 (providing for, among other things, costs to be levied against a defendant on each criminal action resulting in a felony conviction); § 24–4.2–104(1)(a)(I), C.R.S.2012 (providing for, among other things, a surcharge to be levied against a defendant on each criminal action resulting in a felony conviction).

¶ 14 Applying these principles here mandates that the restitution, fees, and costs imposed on Nelson in connection with her overturned conviction be vacated, because there is no valid conviction to which any such restitution, fees, and costs may be tied. The question thus becomes whether Nelson is entitled to seek, and the district court is authorized to award, a refund of the restitution, fees, and costs that Nelson has already paid.

¶ 15 With respect to the fees and costs, our supreme court has held that when a conviction is vacated, the parties should be "placed in *status quo* by refund to the defendant of the sums paid as fine and costs." *Toland v. Strohl*, 147 Colo. 577, 586, 364 P.2d 588, 593 (1961); *cf. People v. Noel*, 134 P.3d 484, 487 (Colo.App.2005) (distinguishing *Toland* on the ground that it did not involve probation supervision fees and concluding that, because the purpose of probation is primarily rehabilitative, and because the defendant could have benefited from the services that she received and paid for, the district court did not err in denying the defendant's motion for a refund of the probation supervision fee). The People cite no authority contrary to *Toland*, and we are aware of none.

¶ 16 Accordingly, we conclude that Nelson was entitled to seek, and the district court was authorized to award, a refund of the fees and costs that Nelson paid in connection with her now overturned conviction.

¶ 17 With respect to restitution, although no published Colorado appellate decisions appear to have addressed the question of whether a defendant in Nelson's position may seek a refund of the restitution previously paid, courts in other jurisdictions have done so. For example, in *Telink, Inc. v. United States*, 24 F.3d 42, 46 (9th Cir.1994), the court rejected the argument that a petitioner who had filed a successful writ of error from a judgment was required to file a Tucker Act claim to recover fines or restitution stemming from a wrongful conviction. Rather, on the facts before it, which involved only fines and not restitution, the court agreed that the recovery of wrongly paid fines is incident to the vacating and setting aside of a wrongful conviction. *Id.* at 46–47. Thus, the court held that if the defendants were to prevail in setting aside their convictions, then the wrongly paid fines would be "automatically refunded" without requiring a civil action. *Id.* at 47.

¶ 18 Similarly, in *United States v. Beckner*, 16 F.Supp.2d 677, 679 (M.D.La.1998), the court rejected the government's argument that because it had already disbursed the restitution funds, it should not be required to repay the defendant, observing, "The government offers neither logic nor authority to support this argument." The court thus held, "[T]his court has jurisdiction to carry out its obligation to completely vacate all aspects of the erroneous [judgment] issued by it." *Id.*

¶ 19 Finally, in *United States v. Venneri*, 782 F.Supp. 1091, 1093 (D.Md.1991), the court observed, as pertinent here, that there is always a means for a person to recoup his or her losses when the loss takes the form of a monetary fine. The court added, "The interests of justice make it imperative that the petitioner receive a refund of his restitution." *Id.* The court then proceeded to hold that the wrongfully convicted defendant was entitled to recover from a third party the restitution paid to that third party as a consequence of the defendant's unconstitutional conviction. *Id.* at 1094. In so holding, the court stated, "[P]rinciples of justice require no less than a full refund of that money." *Id.* at 1094–95; *see also United States v.*

*Lewis,* 478 F.2d 835, 836 (5th Cir. 1973) ("We can see no reason why a person who has paid a fine pursuant to an unconstitutional statute should be required to resort to a multiplicity of actions in order to obtain reimbursement of money to which he is entitled. Since the district court was empowered to set aside the conviction, it could also correct the unlawful result of the conviction and require the repayment of the money collected as fines."). *But see United States v. Hayes,* 385 F.3d 1226, 1228–30 (9th Cir.2004) (concluding that a defendant was not entitled to a refund of restitution when his conviction was affirmed on appeal, he ultimately filed a successful habeas corpus petition, and the government chose not to retry him, because the government had merely served as an escrow agent pending the final judgment, had paid the funds over to the victims at the proper time, and, thus, had acted properly).

¶ 20 We are persuaded by the reasoning of those cases in which courts have allowed a defendant to seek a refund of the restitution paid in connection with a conviction that is subsequently overturned either through an appellate reversal and a subsequent acquittal or through an appellate reversal and an ultimate decision not to prosecute or a dismissal by the prosecution. In such cases, the state will have failed to prove that the defendant is guilty of the charged crimes beyond a reasonable doubt (which distinguishes such cases from a case like *Daly,* in which the conviction was abated only by operation of law and through no action of the prosecution).

¶ 21 Accordingly, we conclude that in addition to her right to seek a refund of the fees and costs that she paid, Nelson is entitled to seek, and the district court is authorized to award, a refund of the restitution that Nelson paid in connection with her overturned conviction.

### C. Means of Obtaining Refund

¶ 22 Having so determined, we must address the mechanism by which Nelson may seek such a refund.

¶ 23 Although we have found no published Colorado appellate decisions directly on point, courts in other jurisdictions have concluded that a defendant who pays fines or restitution based on a conviction that is later set aside may seek a refund in the pending criminal case without having to file a separate civil action. *See, e.g., Telink,* 24 F.3d at 47 (noting that if the defendants prevail in setting aside their convictions, then "the wrongly paid fines would be automatically refunded, without requiring a civil action"); *Lewis,* 478 F.2d at 836 (discerning no reason why a person who has paid a fine pursuant to an unconstitutional statute should be required to resort to a multiplicity of actions in order to obtain reimbursement of money to which he is entitled, and noting that the district court was empowered to require the repayment of the fines); *Cooper v. Gordon,* 389 So.2d 318, 319 (Fla.Dist.Ct.App.1980) (holding that the district court had jurisdiction to entertain the defendant's motion for a refund of the fines, costs, and restitution that he paid before his conviction was reversed); *see also United States v. Wilson,* 540 F.2d 1100, 1104 (D.C.Cir.1976) (noting that property seized in a criminal proceeding may ultimately be disposed of by the court in that proceeding or in a subsequent civil action but stating, "It makes for an economy of judicial effort to have the matter disposed of in the criminal proceeding by the judge that tried the case."). *But see State v. Peterson,* 153 Idaho 157, 280 P.3d 184, 194 (Idaho Ct.App. 2012) (concluding that the district court lacked subject matter jurisdiction to grant a refund motion and that even if the court had such jurisdiction, it lacked personal jurisdiction over the nonparty agencies that collected, disbursed, or retained the amounts paid).

¶ 24 Although not directly on point, the division's decision in *People v. Hargrave,* 179 P.3d 226 (Colo.App.2007), is instructive. In *Hargrave,* the division concluded that the district court in a criminal proceeding had ancillary jurisdiction, or inherent power, to entertain the defendant's post-sentence motion for the return of seized property. *Id.* at 230. Specifically, the division quoted with approval a case from the United States Court of Appeals for the District of Columbia Circuit, which stated that a court may exercise ancillary jurisdiction when:

"(1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new factfinding proceeding; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated."

*Id.* at 229–30 (quoting *Morrow v. District of Columbia,* 417 F.2d 728, 740 (D.C.Cir.1969)); *see also Yording v. Walker,* 683 P.2d 788, 791 (Colo. 1984) (concluding that the district court erred in holding that it lacked the authority to order a refund of some or all of the premium payment that the defendant had made to a surety as a result of the court's erroneous grant of bail).

¶ 25 We are persuaded by the reasoning in *Hargrave* and the above-described cases that hold that a defendant may seek a refund by filing a motion in his or her criminal case. Specifically, here, (1) Nelson's refund petition arose from the same transaction that was the basis of the main proceeding; (2) her petition could be determined without a substantial new factfinding proceeding; (3) deciding her refund petition would not deprive any party of a substantial procedural or substantive right; and (4) in our view, Nelson's refund petition must be settled to ensure that the disposition of the underlying criminal proceeding will not be frustrated. *See Hargrave,* 179 P.3d at 229–30.

¶ 26 Moreover, we conclude that judicial economy will better be served by allowing the matter of the restitution, fees, and costs to be resolved in the criminal proceeding by the court that tried the case, even if the criminal case has been concluded. *See Wilson,* 540 F.2d at 1104. And such a result is consistent with Crim. P. 57(b), which provides:

If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these Rules of Criminal Procedure or with any directive of the Supreme Court regarding the conduct of formal judicial proceedings in the criminal courts, and shall look to the Rules of Civil Procedure and to the applicable law if no Rule of Criminal Procedure exists.

¶ 27 We are not persuaded otherwise by the People's assertion that Nelson's request for a refund of restitution, fees, and costs amounts to an improper challenge to the DOC's management of inmates. The cases on which the People rely do not involve efforts to recover restitution, fees, or costs paid in connection with a subsequently overturned conviction. Rather, those cases involved challenges to the DOC's actions in enforcing orders for the payment of restitution, fees, and costs where, unlike here, the defendant's conviction had not been overturned. *See, e.g., People v. Carrillo,* 70 P.3d 529, 530–31 (Colo.App.2002) (noting that the defendant's claims, which asserted that the DOC's practice of withholding restitution funds from his inmate account was illegal and unconstitutional, were not cognizable under Crim. P. 35(a) or 35(c)); *Jones v. Colo. Dep't of Corr.,* 53 P.3d 1187, 1191 (Colo.App.2002) (concluding, among other things, that the district court lacked jurisdiction over the defendant's purported C.R.C.P. 106(a)(4) action demanding the return of restitution funds withheld from his inmate account, because the inmate was not challenging a judicial or quasi-judicial action of the DOC).

¶ 28 In reaching our conclusion here, we are not unmindful of the fact that in certain cases, the state may be required to refund monies that it has already disbursed to third parties (i.e., people and entities not controlled by the state). For several reasons, however, we believe that such a result is reasonable and appropriate.

¶ 29 First, it was the state's action that ultimately resulted in the wrongful payment of restitution.

¶ 30 Second, when the state chose to disburse the funds, it necessarily assumed the risk that the conviction could ultimately be overturned.

¶ 31 Third, we do not believe it appropriate to create a scenario in which former criminal defendants are left to seek out and file lawsuits or other proceedings against third parties, and especially crime victims, to recover the restitution amounts that the defendants previously paid.

¶ 32 Fourth, when a former defendant seeks a refund from the state, there is nothing to preclude the state, in its discretion, from seeking to recover such restitution amounts from the third parties, and we view this as a more palatable option, given that the state would have had prior dealings with the victims and any service providers. In addition, the state would be in the best position to assess whether the amount of the restitution at issue or the impact on the victims or service providers justifies any effort to recover such funds.

¶ 33 Finally, in a situation like that present here, where either the former defendant or the state must bear the risk of a wrongly paid restitution award, we believe that the risk should rest with the state, which collected the restitution funds but then ultimately failed to prove its case and which would likely be better able to bear the risk.

¶ 34 In so holding, we note that this case has come to us with little case law or legislative guidance to assist us. Nonetheless, it was incumbent on us to decide the appropriate remedy here, and we have done so in a way that we believe is warranted and appropriate on the facts presented and existing law. We recognize, however, that cases like this present a myriad of issues, some of which appear to implicate difficult questions of public policy. Accordingly, we encourage the General Assembly to consider the questions presented in this case and in *People v. Madden*, 2013 COA 56, —— P.3d ——, which we are also deciding today.

¶ 35 In light of our foregoing disposition, we need not address Nelson's assertion that the denial of her motion for a refund of restitution violates certain of her federal and state constitutional rights.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## III. Conclusion and Remand Order

¶ 36 For these reasons, the order is reversed, and the case is remanded to the district court to consider on the merits Nelson's motion for a refund of the restitution that she paid.

JUDGE LOEB and JUDGE VOGT * concur.