**UNITED STATES of America,
Plaintiff,**

v.

**Brigitte RIEDL, Defendant.**

**No. CR NO 98–624 ACK.**

United States District Court,
D. Hawaiʻi.

Aug. 13, 2001.

one count of possession with intent to distribute cocaine, two counts of aiding and abetting the distribution of cocaine, one count of distributing cocaine, and five counts of money laundering. The jury additionally found by special verdict that nine properties owned by Defendant were involved in the money laundering offenses and were subject to forfeiture to the United States.

On December 20, 1999, Defendant filed a Motion to Set Aside Forfeiture, claiming that the forfeiture of her property would be an excessive fine within the meaning of the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, as the forfeiture is grossly disproportional to the gravity of Defendant's offenses.

After hearing oral argument, this Court denied Defendant's motion on January 7, 2000, finding that the forfeiture was not grossly disproportional to the gravity of Defendant's offense. After considering the value of Defendant's property sought to be forfeited, the fines authorized by the Guidelines for the offense committed, and other factors, such as the relation of the violation to other illegal activities, and the extent of harm caused, the Court concluded that the amount of forfeiture had a direct proportionality to the gravity of Defendant's offenses. The Court noted, however, that it would reconsider the issue at the time of Defendant's sentencing, and ordered that the subject properties not be sold prior to sentencing.

Defendant was scheduled to be sentenced on August 29, 2000. On August 21, 2000, Defendant filed a Memorandum in Support of Reconsideration of Defendant's Motion to Set Aside Forfeitures. Defendant argued *inter alia* that the forfeiture of Defendant's property would be an excessive fine within the meaning of

Alan Ellis, Wayne Anderson, Law Offices of A;an Ellis, Sausalito, CA, David F. Klein, Honolulu, HI, Myles S. Breiner, Honolulu, HI, Richard J. Troberman, Seattle, WA, for Brigitte Riedl.

Thomas Muehleck, Rachel S. Moriyama, Office of U.S. Atty., Honolulu, HI, for U.S.

***ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE FORFEITURE AS AN EXCESSIVE FINE UNDER THE EIGHTH AMENDMENT***

KAY, District Judge.

## BACKGROUND

On November 24, 1999, Brigitte Riedl ("Defendant") was convicted by a jury of

the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, as the forfeiture is grossly disproportional to the gravity of Defendant's offenses. The Government filed a Memorandum in Opposition on August 25, 2000. The Government argued that the forfeiture is not excessive, but rather is appropriate and consistent with current forfeiture law in light of the gravity of her criminal conduct, her personal culpability, and the harm to the community.

The Court first heard oral argument and testimony by Defendant's expert witness regarding Defendant's alleged diminished capacity due to mental disorder on August 29, 2000. The Court granted the Government leave to have Defendant examined by its own expert and continued the sentencing until such time as Defendant had been examined by the Government's experts. On February 7, 2001 the Government filed a Forensic Psychological Evaluation of Defendant prepared by Dr. Harold Hall. On March 28, 2001 the Court ordered Defendant to undergo further neuropsychological testing by the Bureau of Prisons. On May 21, 2001 Drs. Maureen Burris and Ralph Ihle of the Bureau of Prisons submitted their report on Defendant.

On June 12, 2001 Defendant filed a Final Supplemental Sentencing Memorandum addressing the forfeiture and other sentencing arguments as well as presenting evidence regarding Defendant's mental condition. On July 12, 2001 the Government filed a Final Supplemental Sentencing Memorandum on the same issues. Sentencing was rescheduled for July 26, 2001.

The Court heard oral argument and expert testimony on July 26, 2001.

## DISCUSSION

Defendant argues that the forfeiture of all nine of Defendant's properties involved in the money laundering offenses is excessive and violates the Excessive Fines Clause of the Eighth Amendment, as the forfeiture is grossly disproportional to the gravity of Defendant's offenses. The Government disagrees, as does this Court.[1]

■ A forfeiture is excessive if it is "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian,* 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). Translating the gravity of a crime into monetary terms—such that it can be proportioned to the value of forfeited property—is not a simple task. In doing so, the court must look at the specific facts of each case, and the culpability of the offender must be examined specifically, rather than examining the gravity of the crime in the abstract. *See id.; see also United States v. 3814 NW Thurman St., Portland, Oreg., a Tract of Real Property,* 164 F.3d 1191, 1197 (9th Cir.1999). Factors to be considered in determining an individual defendant's culpability include the nature and extent of the criminal activity, its relation to other crimes, its penalties, and the harm it caused. *See Id.; see also, United States v. Ahmad,* 213 F.3d 805, 817 (4th Cir.2000) (using these four factors to measure a defendant's culpability).

In considering the above factors, the *Bajakajian* Court first noted that the crime at issue was "solely a reporting offense," explaining that transporting currency out of the country is lawful as long as the currency is reported. *See id.* at 337, 118 S.Ct. 2028. The Court also emphasized that this "single" reporting offense "was unrelated to any other illegal

---

1. At sentencing the Court found that there was ample evidence presented at trial to support the jury's finding that each of the nine properties was involved in the money laundering offenses committed by Defendant and that Defendant clearly agreed and expressed intent to launder over $2.6 million of drug proceeds.

activities"—that is, the currency was produced by and used for legal activities. *Id.* at 338, 118 S.Ct. 2028. Finally, the Court determined that the harm caused by the offense was also minimal:

> Failure to report his currency affected only one party, the Government, and in a relatively minor way. There was no fraud on the United States, and respondent caused no loss to the public fisc. Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country.

*Id.* at 339, 118 S.Ct. 2028. The Court stressed that the harm was minimal because the offense resulted only in a loss of information to the government. For these reasons, the Court held that the forfeiture of $357,144 for a single reporting violation, unrelated to any other illegal activity, and harming only the United States "in a relatively minor way," constituted an excessive fine in violation of the Eighth Amendment. Thus the Court determined that a forfeiture that was almost 72 times greater than the applicable guidelines fine was grossly disproportionate.

In applying these same factors to the instant case, the Court finds that the forfeiture at issue is not grossly disproportionate to the gravity of the offense.

### A. *Other Penalties*

In considering an offense's gravity, the other penalties that the legislature has authorized are relevant evidence, as are the maximum penalties that could have been imposed under the Sentencing Guidelines. *See Thurman St.,* 164 F.3d at 1197. If the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional. *See United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.,* 175 F.3d 1304, 1309 (11th Cir.1999) ("[I]f the value of the property forfeited is within or near the permissible range of fines" the forfeiture is almost certainly not excessive). Furthermore, if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive. *See id.* at 1310; *see also Bajakajian,* 524 U.S. at 339 & n. 14, 118 S.Ct. 2028, (holding that forfeiture of $357,144 in currency was excessive where the maximum statutory fine was $250,000 and the maximum fine under the sentencing guidelines was $5,000); *United States v. 427 & 429 Hall St.,* 74 F.3d 1165, 1172–73 (11th Cir.1996) (holding that forfeiture of property valued at $65,000 was not excessive where the maximum fine under the sentencing guidelines was $40,000).

In this case, Defendant was convicted of five counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). The Government seeks to forfeit property with a net value ranging from approximately $1,374,300 to $1,193,521.[2] The maximum statutory fine for each of the

---

**2.** These figures represent the approximate value of Defendant's equity in the properties. *See United States v. Real Property Located at 25445 Via Dona Christa, Valencia, Ca.,* 138 F.3d 403, 408 (9th Cir.1998) (considering the approximate amount the property netted after sale in determining value of property for forfeiture purposes); *United States v. Asquini,* 1999 WL 459544, *1, n. 4 (9th Cir.1999) (unpublished) (noting existence of mortgage in determining fair market value of defendant's unencumbered interest in forfeited property). Furthermore, the fair market value is assessed as of the date the property is transferred. *See In re Metmor Financial, Inc.,* 819 F.2d 446, 450 (4th Cir.1987) (in determining just compensation, defining fair market value as the "fair market value of property on the date it is appropriated ... the date of the transfer of title"); *Yancey v. United States,* 915 F.2d 1534, 1543 (Fed.Cir.1990) ("Fair market value under the Fifth Amendment is normally ascertained at the date ... of the taking.").

offenses is $250,000.[3] *See* 18 U.S.C. § 3571(b)(3). As Defendant was found guilty of five counts of money laundering in violation of U.S.C. § 1956(a)(3)(B), the total maximum statutory fine applicable to Defendant can be calculated by aggregating the maximum statutory fine for each count, which totals $1,250,000, a sum approximately equal to the net value of Defendant's properties. *See United States v. Kenny,* 462 F.2d 1205, 1229 (3rd Cir.1972) ("The maximum fine in a general sentence may be determined by aggregating the maximum under each count.") *citing Robles v. United States,* 279 F.2d 401, 407 (9th Cir.1960) (aggregating maximum sentences of imprisonment under each count); *see also United States v. Mejia–Mesa,* 153 F.3d 925, 929–930 (9th Cir.1998) (finding no Eighth Amendment violation where Defendant was fined the maximum statutory fine of $250,000 on each of three counts for an aggregate fine of $750,000); *United States v. Young,* 66 F.3d 830, 839 n. 8 (7th Cir.1995) (calculating statutory maximum fine by aggregating the maximum fine for each count).

█ Although the statutory fine is a consideration, the Supreme Court has indicated that when considering the gravity of the offense, the fines authorized by the Guidelines should weigh heavier than statutory fines, as the Guidelines are more particularized. *See Bajakajian,* 524 U.S. at 337, 118 S.Ct. 2028; *see also id.* at 2044 (Kennedy, J., dissenting) (noting that the purpose of the sentencing guidelines "is to select punishments with precise proportion"). Turning to the Sentencing Guidelines as they relate to this case, the Court

has determined that Defendant's offense level is properly calculated at 24, because the Government established by clear and convincing evidence the appropriate value of the funds to be considered is $2.6 million and Defendant is eligible for a 2 level downward adjustment for acceptance of responsibility and a 3 level departure for diminished capacity. The Guidelines provide for a maximum fine of $100,000 for such an offense—approximately twelve times less than the value of Defendant's properties.[4]

Assuming that the forfeiture of Defendant's equity interest in the properties would be twelve times the maximum fine permitted under the Guidelines for the money laundering offenses, such a forfeiture is not grossly disproportional to the gravity of the offense, when other factors weighing in favor of the forfeiture are taken into consideration. *See, e.g., Ahmad,* 213 F.3d at 817–19 (determining forfeiture of $101,587.42 not grossly excessive where maximum Guidelines fine was $5,000 and statutory maximum fine was $250,000, noting that these penalties do not "confirm a minimal level of culpability" as they did in *Bajakajian,* given consideration of other factors relevant to evaluating gravity of underlying offense).

### B. *Nature and Extent of Defendant's Criminal Activity*

Regarding the extent and nature of Defendant's criminal activity, here, Defendant intended to launder over $2.6 million of drug proceeds, as evidenced by the contracts for the sale of Defendant's proper-

---

3. The Court notes that in its Order dated January 7, 2000 Denying Defendant's Motion to Set Aside Forfeiture the Court incorrectly applied the maximum statutory fine under 18 U.S.C. § 1956(a)(1) or (2) of $500,000 rather than the $250,000 maximum statutory fine applicable for a violation of 18 U.S.C. § 1956(a)(3)(B).

4. The Court notes that under the Sentencing Guidelines the applicable fine range for Defendant, taking into consideration her drug convictions, is $15,000—$1,000,000. *See* § 5E1.2(c)(4); 21 U.S.C. § 841(b)(1)(C).

ties, signed by both buyer and seller and the monetary deposits made by Defendant. Thus, the nature of Defendant's money laundering offense was supportive of illegal narcotics activities as represented to Defendant by the undercover agent. Unlike Bajakajian's offense, Defendant's offenses were not "a single, isolated untruth affecting only the Government", but rather were a series of negotiations and transactions over a lengthy period of time. *Ahmad*, 213 F.3d at 817; *see also, Thurman St.*, 164 F.3d at 1191 (9th Cir.1999) (finding a forfeiture that was more than 40 times greater than the applicable guidelines fine was grossly disproportionate where Defendant filed a single false loan application). The jury found that Defendant intentionally and knowingly committed the charged crimes of drug distribution and money laundering.

▇▇▇ Defendant argues that she suffers from diminished mental capacity which mitigates her personal culpability to such an extent that the forfeiture is excessive. Defendant and the Government presented expert witnesses and reports concerning Defendant's mental capacity to the Court. Although the Court finds that Defendant suffers from significantly reduced mental capacity which entitles her to a downward departure in sentencing, the Court finds that while her reduced mental capacity makes her somewhat less culpable to a limited extent, it does not make the forfeiture excessive under the Eighth Amendment. Defendant had the intent and was willing and able to launder $2.6 million in drug proceeds regardless of her diminished capacity.

Moreover, in finding that a three level downward departure was appropriate the Court found that Defendant's impairment was not the sole cause of her involvement and that her incapacity was of a limited nature. The limited extent of the impairment is demonstrated by Defendant's ability to accumulate significant properties and assets [5], manage her assets, and devise and implement a sophisticated laundering scheme (including having the agent sign a sales contract for the property, establishing an escrow account, instructing the agent to deposit the drug proceeds into her bank account, and obtaining a cashier's check for the agent to deposit in the escrow account).

### C. *Other Related Illegal Activity*

In this case the forfeiture of Defendant's property is based on her conviction of laundering money that she thought was related to illegal activity. That is, the $2.6 million Defendant was willing to launder was allegedly proceeds from illegal narcotics activities.

Although the Court does not take the following into account in this forfeiture analysis, it notes that Defendant was also convicted of unrelated drug conspiracy and drug distribution charges. In addition, the parties stipulated that Defendant's property was connected to prostitution activities and the Court finds the evidence clearly and convincingly established that defendant was aware of such activities. However, it appears that such criminal conduct does not fall within the category of "other related illegal activity" as construed in previous cases. *See Bajakajian*, 524 U.S. at 337, 118 S.Ct. 2028; *Thurman St.*, 164 F.3d at 1197, and *Ahmad*, 213 F.3d at 816.

### D. *Harm Caused*

Regarding the extent of harm caused, although the Government did not suffer

---

**5.** The Court notes that Defendant represented that she arrived in this country in 1970 with approximately $200,000, and during the intervening twenty-five years she was able to amass property and assets valued at over $2 million dollars (as described in her Presentence Report, Defendant owns other valuable properties not subject to the forfeiture).

any actual monetary loss, Defendant knowingly assisted self-proclaimed criminals to illegally launder their tainted drug proceeds. The fact that the instant offense was the result of a "sting" operation does not lessen the gravity of the offense. In evaluating the harm to the community, the Court considers the fact that Defendant was unaware that she was dealing with undercover agents and was perfectly willing to launder what she believed to be large amounts of drug proceeds. Moreover, although the Court is not relying on this factor in this analysis, there was substantial harm caused to the community due to the prostitution and drug activity on the property and by Defendant.

In sum, in considering the above factors to compare the gravity of Defendant's offenses with the forfeiture the Government seeks, the Court concludes that the amount of property the Government seeks to forfeit is not grossly disproportionate to the gravity of Defendant's offenses. The combined value of the property is not grossly disproportionate to the amount of fines permitted by the Sentencing Guidelines and statutory limits. *See Bajakajian*, 524 U.S. at 337, 118 S.Ct. 2028 (invalidating forfeiture that was almost 72 times the maximum fine under Guidelines); *Ahmad*, 213 F.3d at 817 (upholding forfeitures 17 and 20 times greater than the maximum applicable guidelines fine noting that these penalties do not "confirm a minimal level of culpability" as they did in *Bajakajian*, given consideration of other factors relevant to evaluating gravity of

underlying offense); *Thurman St.*, 164 F.3d at 1197 (invalidating forfeiture more than 40 times the maximum Guideline fine).[6]

## CONCLUSION

For the foregoing reasons the Court finds that forfeiture of the nine properties involved in the money laundering offenses does not constitute an excessive fine under the Eighth Amendment and DENIES Defendant's Reconsideration of Motion to Set Aside Forfeiture.

IT IS SO ORDERED.

---

6. The Court notes that the amount of forfeiture appears to have a direct proportionality to the gravity of Defendant's offenses as the Government is seeking to forfeit the same properties that Defendant intended to use to illegally launder drug proceeds; however, the Supreme Court has determined that where the government is proceeding against a defendant criminally, in personam, rather than proceeding in rem against her property, a

court must apply the proportionality test rather than the instrumentality test in analyzing the forfeiture under the Eighth Amendment. *See Bajakajian*, 524 U.S. at 333–34, 118 S.Ct. 2028 (rejecting the Government's argument that the defendant's entire $357,144 should be forfeited because it involved the instrumentality of his crime). Accordingly, the Court has utilized the proportionality test and not the instrumentality test.