**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

BRIGITTE RIEDL,
              *Defendant-Appellant.*

No. 06-10424

D.C. No.
CR-98-00624-ACK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted
July 10, 2007—San Francisco, California

Filed August 6, 2007

Before: David R. Thompson, Pamela Ann Rymer and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

**COUNSEL**

Kenneth Owen (argued), Las Vegas, Nevada, for the appellant.

Edward H. Kubo, Jr., United States Attorney, and Rachel S. Moriyama (argued), Assistant United States Attorney, Honolulu, Hawaii, for the appellee.

## OPINION

FISHER, Circuit Judge:

Brigitte Riedl was convicted of various offenses in 1999, including five counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B), and served her resulting 66-month prison sentence. Although she has been released from custody, she now petitions for a writ of error coram nobis. She contends that the money laundering statute under which she was convicted is unconstitutionally vague, and that there was insufficient evidence that her activities affected interstate commerce.

We agree with the district court that Riedl's petition must be denied. She has failed to provide any valid reasons for waiting so long to challenge her convictions on these grounds, and thus plainly does not satisfy the requirements for the highly unusual remedy of coram nobis relief. *See Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987) (adopting four factors as predicates for coram nobis relief, including that "valid reasons exist for not attacking the conviction earlier"). Riedl attempts to overcome her unjustified delay by invoking the equitable doctrine of laches, arguing that the government has not been prejudiced by her tardiness. *Cf. Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) (addressing laches in coram nobis context). We reject the notion that a petitioner can employ laches in such a fashion. To follow Riedl's suggestion under the circumstances of this case would transform the extraordinary writ of coram nobis into a free pass for attacking criminal judgments long after they have become final.

## I. BACKGROUND

Riedl was convicted by a jury in November 1999 on various counts, including five counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). The jury also found that nine properties Riedl owned were involved in the money laundering and hence subject to forfeiture. The court sentenced Riedl to 66 months in prison for her offenses.

Riedl's money laundering activities took place during a joint "sting" operation by the Honolulu Police Department (HPD) and the Federal Bureau of Investigation in 1997-98. Female undercover HPD officers initially identified themselves to Riedl as prostitutes and rented rooms by the night in her various properties. The officers later told Riedl that they had begun selling drugs and were flush with cash as a result. Riedl and the officers then came up with a scheme to convert the purported drug money into cashier's checks, which in turn were used as deposits for the purchases of various properties Riedl owned. Riedl was present each time the cashier's checks were procured, and she also prepared contracts for all of the real estate transactions. At all relevant times, the officers told Riedl they were purchasing her properties with drug money. Riedl was finally arrested, and the sting operation terminated, in October 1998.

Riedl served her prison sentence and later was deported to Austria in May 2004. She filed a petition for a writ of error coram nobis in January 2006, more than six years after her conviction, alleging that the money laundering statute under which she was convicted is unconstitutionally vague, and that the evidence at trial was insufficient to establish that her money laundering affected interstate commerce. Her petition explained the reasons for her failure to raise these challenges earlier as follows:

> Because Ms. Riedl was deported to Austria, her ability to find competent counsel willing to review her

case and pursue her legal remedies under coram
nobis took some time. Also, her 66-month incarcera-
tion period, her diminished capacity, and the fact that
the Government had seized nine of her real proper-
ties worth $2.7 million prevented her from attacking
her convictions earlier.

The district court denied Riedl's coram nobis petition. The
court agreed with Riedl that she had no other remedy avail-
able because she had already served her sentence, and that her
money laundering convictions continued to have adverse con-
sequences. However, the court ruled that the two other
requirements for obtaining coram nobis relief — a valid rea-
son for the delay in attacking a conviction, and a fundamental
error in the underlying proceedings — were not satisfied. The
court was unpersuaded by Riedl's explanations for her delay,
because they did not account for her failure to assert her
claims on direct appeal or through a 28 U.S.C. § 2255 peti-
tion. The court also found that the government was prejudiced
as to Riedl's insufficient evidence claim, because some of the
evidence the government presented at trial was no longer
available, but not as to her void-for-vagueness claim, because
no retrial would be possible if the money laundering statute
were ruled unconstitutional. On the merits of the two claims,
the court held that the money laundering statute clearly identi-
fies the proscribed conduct and does not encourage arbitrary
or discriminatory enforcement; and that Riedl's use of the
First Hawaiian Bank and an escrow service for the money
laundering created the requisite nexus with interstate com-
merce.

The district court entered its judgment in April 2006, and
Riedl timely appealed.

## II.   STANDARD OF REVIEW

A district court's denial of a petition for a writ of error
coram nobis is reviewed de novo. *See Matus-Leva v. United
States*, 287 F.3d 758, 760 (9th Cir. 2002).

### III. DISCUSSION

**[1]** Both the Supreme Court and we have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable. In *United States v. Morgan*, 346 U.S. 502, 511 (1954), the Court characterized the writ as an "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice." *See also Carlisle v. United States*, 517 U.S. 416, 429 (1996) (" '[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate.' ") (quoting *United States v. Smith*, 331 U.S. 469, 475 n.4 (1947)) (second alteration in original). Similarly, we have described the writ as "extraordinary," *Hirabayashi*, 828 F.2d at 604, "used only to review errors of the most fundamental character," *Matus-Leva*, 287 F.3d at 760, and "fill[ing] a very precise gap in federal criminal procedure," *Telink*, 24 F.3d at 45.

**[2]** In *Hirabayashi*, consistent with the extraordinary nature of coram nobis relief, we adopted the following framework for deciding when the writ should be issued:

> [A] petitioner must show the following to qualify for *coram nobis* relief: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

*Hirabayashi*, 828 F.2d at 604. We have repeatedly reaffirmed this framework in the ensuing two decades. *See, e.g.*, *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005); *Matus-Leva*, 287 F.3d at 760; *Estate of McKinney v. United States*, 71 F.3d 779, 781-82 (9th Cir. 1995); *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991); *United States v.*

*Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989). Applying the second *Hirabayashi* factor, we hold that Riedl has not offered valid reasons for her delay in attacking her convictions. Considering the equitable doctrine of laches that Riedl cites under *Telink*, we hold that it does not supplant or restate the second *Hirabayashi* requirement, but rather constitutes a supplemental defense that the government may invoke when a petitioner seeks coram nobis relief.

## A.   Valid reasons for delay

Riedl asserts that her failure to raise her facial challenge to the statute and her insufficient evidence argument sooner was attributable to her deportation to Austria, her incarceration, her diminished capacity and the forfeiture of some of her properties. We agree with the district court that these reasons, both individually and in combination, do not justify her delay.

**[3]** First, and most importantly, none of Riedl's reasons explains why she did not raise her void-for-vagueness or insufficient evidence claims during trial, on direct appeal or through a 28 U.S.C. § 2255 petition. The relevant law has remained the same throughout this litigation, and Riedl actually filed post-verdict motions with the district court and a direct appeal with this court, none of which mentioned her present claims. Notably, Riedl herself concedes that nothing prevented her from asserting her claims earlier, stating in her briefing that she "could have *possibly* raised the . . . claims in the direct appeal to the Ninth Circuit *or* under 28 U.S.C. § 2255" (her emphasis). This concession is fatal to Riedl's request that the extraordinary writ of error coram nobis be issued here. *See Maghe v. United States*, 710 F.2d 503, 503-04 (9th Cir. 1983) (denying coram nobis petition as untimely where claim could have been raised earlier and there were no sound reasons for the delay); *cf. United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988) ("Claims that could have been raised by direct appeal are outside the scope of the writ [of coram nobis].").

**[4]** The specific reasons that Riedl offers for her tardiness are also unpersuasive. As the district court observed, Riedl's deportation argument "does not explain why she did not challenge her conviction *prior* to her deportation," either during the nine months between her release from prison and her deportation, or while she was still imprisoned. Additionally, even taking into account the difficulty of litigating in the United States while residing abroad, Riedl has not accounted for the further 20-month delay between her deportation and the filing of her coram nobis petition. Riedl's reference to her incarceration period is similarly unhelpful, as prisoners are able to challenge their convictions while in custody through direct appeal or a petition for a writ of habeas corpus.

**[5]** Lastly, Riedl's diminished capacity and the forfeiture of some of her properties do not justify her tardiness, because she was represented by counsel at least until November 2003, when her direct appeal to this court was denied. The degree of her mental impairment was in any case "limited," as "demonstrated by [her] ability to accumulate significant properties and assets, manage her assets, and devise and implement a sophisticated laundering scheme." *United States v. Riedl*, 164 F. Supp. 2d 1196, 1201 (D. Haw. 2001). And even after the forfeitures her net worth was estimated at $861,030 — far more money than most criminal defendants have at their disposal to challenge their convictions.

**[6]** Not surprisingly, no decision of this court has found reasons similar to those put forth by Riedl as justifying coram nobis relief. Rather, we have considered delay to be reasonable when the applicable law was recently changed and made retroactive, *see Walgren*, 885 F.2d at 1421, when new evidence was discovered that the petitioner could not reasonably have located earlier, *see Hirabayashi*, 828 F.2d at 605, and when the petitioner was improperly advised by counsel not to pursue habeas relief, *see Kwan*, 407 F.3d at 1013. We and our sister circuits have rejected coram nobis petitions as untimely when the petitioner took 25 years to challenge an undesirable

army discharge that he had not previously tried to upgrade, *see Maghe*, 710 F.2d at 503-04, when there was a seven-year delay during which the petitioner did not exercise due diligence, *see Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989), and when the petitioner waited 16 years to relitigate a claim that had been raised and then dropped on direct appeal, *see United States v. Correa-De Jesus*, 708 F.2d 1283, 1284-86 (7th Cir. 1983). Riedl's situation is plainly more analogous to *Maghe*, *Klein* and *Correa-De Jesus* than to *Walgren*, *Hirabayashi* and *Kwan*. Like the petitioners in the former group of cases, she has failed to offer any legitimate explanations for not raising her challenges to her convictions sooner or through more usual channels.

**[7]** We therefore hold that Riedl has failed to demonstrate that "valid reasons exist for not attacking the conviction[s] earlier." *Hirabayashi*, 828 F.2d at 604. Accordingly, the district court properly denied her coram nobis petition.

## B.  Laches

Riedl argues, however, that she was not required to provide valid reasons for her delay until the government first established it would be prejudiced by the late assertion of her void-for-vagueness and insufficient evidence claims. In her view, "[t]hat a petitioner establish valid reasons for not attacking the conviction earlier is an element of a laches rebuttal . . . . [U]nless and until the Government demonstrates laches, the coram nobis petitioner is not required to state valid reasons for not attacking the conviction earlier." We disagree. Riedl's approach would largely eviscerate the gate-keeping framework *Hirabayashi* articulated and open the door to inexcusably late claims. The cases Riedl cites do not compel granting defendants such an easy path to the extraordinary writ of coram nobis.

**[8]** As a preliminary matter, Riedl is correct that laches operates differently from the second coram nobis requirement.

Under the *Hirabayashi* framework, the burden of proof is on the petitioner to offer valid reasons for the delay. *See id.* Under laches, on the other hand, "the government first must make a prima facie showing of prejudice . . . . If the government meets that burden, the burden of production of evidence then shifts to the petitioners to show either that the government actually was not prejudiced or that the petitioner exercised reasonable diligence in filing the claim." *Telink*, 24 F.3d at 47; *see also Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000) (laches requires "a defendant [to] prove both an unreasonable delay by the plaintiff and prejudice to itself"). It is also true that some of our decisions have cited laches in their discussions of coram nobis petitions' timeliness. *See, e.g.*, *Kwan*, 407 F.3d at 1013-14; *Telink*, 24 F.3d at 45-48; *Hirabayashi*, 828 F.2d at 605.

Nevertheless, Riedl is incorrect that coram nobis relief is available as long as it is not barred by laches. Our decisions that have considered laches have done so only because the *government* invoked the doctrine as a supplemental defense. Those decisions have not purported to overrule the *Hirabayshi* framework, which places the initial burden of justifying delay squarely on the petitioner, nor as three-judge opinions could they have done so. Indeed, in *Hirabayashi* itself we analyzed the applicability of laches only because "*[t]he government argue[d]* that the district court should have dismissed the petitioner's claim on the ground of laches," 828 F.2d at 605 (emphasis added), and in *Kwan* we stated that "*[i]f a respondent [i.e., the government] seeks dismissal of a coram nobis petition on the ground of laches*, the respondent bears the burden of showing [it] was prejudiced by the petitioner's delay," 407 F.3d at 1013 (emphasis added). Likewise, it was the government that relied on laches in *Telink* — as did the district court in denying the coram nobis petition. *See Telink*, 24 F.3d at 44 ("The district court concluded that the petitioners' claim was barred by laches."); Brief of United States at 23-25, *Telink*, 24 F.3d 42 (No. 93-50034), 1993 WL

13101350 (invoking doctrine of laches and arguing that "the Government had made a prima facie showing of prejudice").

Moreover, none of our previous decisions involved any conflict between the second coram nobis requirement and laches. In *Hirabayashi* and *Kwan*, for instance, the petitioners offered valid reasons for their delay and there was no showing by the government of prejudice; therefore both the second coram nobis requirement and laches supported a holding of timeliness. In *Telink*, on the other hand, petitioners failed to exercise reasonable diligence and the government was thereby prejudiced; therefore both the second coram nobis requirement and laches supported a denial of the petition as untimely.

**[9]** Here, however, it is the petitioner Riedl who — unable to meet *Hirabayashi*'s reasonable delay requirement — seeks to use laches to shift onto the government an initial burden to show prejudice, and thus to make her untimeliness irrelevant. Even under a laches analysis, Riedl's insufficient evidence claim would be barred because, as the district court found, the unavailability of some of the evidence and witnesses from Riedl's trial would hamper the government's ability to prove that her money laundering affected interstate commerce. *See Telink*, 24 F.3d at 48. On the other hand, if Riedl's void-for-vagueness challenge to the money laundering statute were to succeed, the government would not be prejudiced, because it would be unable to retry her at all. *But see Foont v. United States*, 93 F.3d 76, 80 (2d Cir. 1996) (noting "government's interest in the finality of convictions"). In this context — which requires us for the first time to confront the latent tension between the second coram nobis requirement and laches — we reaffirm the *Hirabayashi* framework and hold that the burden remained on Riedl to demonstrate that her delay was reasonable. Given that her delay was unreasonable, she cannot now bring her untimely facial challenge simply because the government is unable to show prejudice as to a new trial. As the Second Circuit persuasively reasoned in comparable cir-

cumstances in *Foont*, "the proper standard by which the existence of 'sound reasons' should be measured is [not] that of laches . . . . The critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay." *Id.* (quoting *Morgan*, 346 U.S. at 512).

## IV.  CONCLUSION

**[10]** We affirm the district court's denial of Riedl's petition for a writ of error coram nobis. Riedl has offered no valid reasons for her delay in attacking her convictions, and thus is ineligible for coram nobis relief. It is irrelevant that the government has not established prejudice as to Riedl's void-for-vagueness claim because the doctrine of laches only becomes applicable once a petitioner has satisfied the second coram nobis requirement, which Riedl has not.

   **AFFIRMED.**