**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

YULY KROYTOR,

*Defendant - Appellant.*

No. 24-3444

D.C. No.
2:03-cr-00379-
JAM-CKD-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted August 22, 2025
San Francisco, California

Filed October 21, 2025

Before: Morgan B. Christen, Kenneth K. Lee, and Daniel
A. Bress, Circuit Judges.

Opinion by Judge Lee

# SUMMARY[*]

## Coram Nobis

The panel affirmed the district court's denial of Yuly Kroytor's second coram nobis petition seeking to vacate his 2003 conviction by guilty plea to health care fraud.

Based on that conviction, the government began removal proceedings in 2008.  Over a decade after his conviction, Kroytor filed his first coram nobis petition, claiming that his attorneys failed to adequately advise him that his conviction could lead to his removal from the United States.  Focusing on the time period between 2014 and 2016, this court in 2020 affirmed the dismissal of the first petition, given Kroytor's delay in filing it.  His second petition, in which he largely recycles the same allegations, claims the attorney who prepared his first coram nobis petition also provided ineffective assistance of counsel.

The panel concluded that Kroytor is not entitled to relief in his second coram nobis petition—this time under the doctrine of laches.  Kroytor's delay prejudiced the government's ability to respond to his ineffective assistance of counsel claim and to retry him for health care fraud.  The panel also rejected Kroytor's claim that he exercised reasonable diligence in filing his petition.  Even if his lawyers gave unsound legal advice, the sentencing judge in 2003 and a U.S. immigration official in 2007 informed him that his conviction could subject him to removal.  Kroytor

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

was thus put on notice of the consequences of his conviction and should have acted sooner to vacate it.

## COUNSEL

Elliot C. Wong (argued), Assistant United States Attorney; Nirav K. Desai, Assistant United States Attorney, Chief of Appeals, Criminal Division; Michelle Beckwith, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Sacramento, California; for Plaintiff-Appellee.

Erin J. Radekin (argued), Law Office of Erin J. Radekin, Sacramento, California, for Defendant-Appellant.

**OPINION**

LEE, Circuit Judge:

In 2003, Yuly Kroytor—who became a U.S. permanent resident in 1995—pleaded guilty to one count of health care fraud in violation of 18 U.S.C. § 1347.  Based on that conviction, the government began removal proceedings in 2008.

Over a decade after his conviction, Kroytor filed a coram nobis petition to vacate his conviction, claiming that his attorneys failed to adequately advise him that his conviction could lead to his removal from the United States.  Focusing on the time period between 2014 and 2016, our court in 2020 affirmed the dismissal of Kroytor's petition, given his delay in filing it.  *United States v. Kroytor*, 977 F.3d 957, 962–63 (9th Cir. 2020).  Kroytor then filed a second petition—the subject of this appeal—in which he largely recycles the same allegations.  Kroytor claims the attorney who prepared his first coram nobis petition also provided ineffective assistance of counsel.

Again, we conclude Kroytor is not entitled to coram nobis relief—this time under the doctrine of laches.  His delay prejudiced the government's ability to respond to his ineffective assistance of counsel claim and to retry him for health care fraud.  We also reject Kroytor's claim that he exercised reasonable diligence in filing his petition.  Even if his lawyers gave unsound legal advice, the sentencing judge in 2003 and a U.S. immigration official in 2007 informed him that his conviction could subject him to removal.  Kroytor was thus put on notice of the consequences of his conviction and should have acted sooner to vacate it.  We

thus affirm the district court's denial of his coram nobis petition.

## BACKGROUND

### I. Kroytor pleads guilty to health care fraud and becomes removable from the United States.

Yuly Kroytor is a Canadian citizen who has been a lawful permanent resident of the United States since 1995. About five years after obtaining legal status, Kroytor embarked on a multi-year fraudulent scheme: He bought fake prescriptions from medical clinics and then submitted false Medicaid/Medi-Cal bills for reimbursement. In 2002, Kroytor learned federal authorities had begun to investigate him for fraud. Soon after, he hired his first attorney, William Graysen, who represented him in plea negotiations.

Kroytor was eventually charged with health care fraud and aiding and abetting the same in violation of 18 U.S.C. §§ 1347(1), (2). The government estimated that Kroytor defrauded taxpayers of between $80,000 and $500,000. Because the loss exceeded $10,000, the crime was an aggravated felony that rendered Kroytor removable and ineligible for certain forms of relief. *See* 8 U.S.C. § 101(a)(43)(M)(i); 8 U.S.C. § 1229b(a)(3).

Kroytor claims he asked his lawyer about potential immigration consequences. Graysen allegedly counseled Kroytor "not to worry" about his immigration status, urging that Kroytor "had bigger problems, such as avoiding jail time." Kroytor decided to plead guilty and appeared before the district court in September 2003. The district court asked Kroytor whether he understood the conviction would make him subject to removal. Kroytor said "yes" and pleaded guilty.

After the plea hearing, Kroytor could not reach Graysen, and in early 2004, he hired a new attorney, Daniel Behesnilian. Kroytor claims that Behesnilian told him that it was too late to withdraw his plea (which was not necessarily correct) but said that immigration authorities would not discover Kroytor's conviction if he paid restitution in full. Kroytor was sentenced to 12 months of probation and ordered to pay $80,000 in restitution. He paid in full before sentencing.

In fall 2007, U.S. immigration authorities detained Kroytor at the Canadian border on his return from a trip outside the United States. An immigration official informed him that his conviction rendered him inadmissible to the United States. Though the government let him return home to California, it placed Kroytor in removal proceedings in February 2008.

## II. Kroytor files his first coram nobis petition.

Over the next several years, Kroytor hired a series of attorneys to represent him in immigration proceedings. In August 2014, after learning that successfully contesting the conviction may be the only way to prevent his removal, Kroytor hired a criminal attorney, Clyde Blackmon, to pursue post-conviction relief.

Nearly two years passed before this attorney filed for post-conviction relief. He filed a coram nobis petition in May 2016—almost nine years after immigration authorities had detained Kroytor at the border. The petition addressed only Behesnilian's alleged advice that Kroytor could not rescind his guilty plea and that he likely would not be removed if he paid restitution. Blackmon allegedly told Kroytor that he delayed filing because he was awaiting further guidance on whether *United States v. Kwan*, 407 F.3d

1005 (9th Cir. 2005)—in which we held that misadvising a defendant about immigration consequences of a conviction could constitute ineffective assistance of counsel—applied retroactively to Kroytor's case.

In June 2019, the district court denied Kroytor's first petition for relief, finding he had no valid reason for stalling in filing. We affirmed, ruling that Kroytor unreasonably delayed between 2014 and 2016 because uncertainty in the law "is not itself a valid reason to delay filing a coram nobis petition." *Kroytor I*, 977 F.3d at 962. Because we concluded that the delay between 2014 and 2016 (attributable to Blackmon) provided a sufficient basis for affirming the denial of Kroytor's first petition, we did not address other periods of possible unjustified delay. *Id.* We also noted that Kroytor's first coram nobis petition was based on "a claim of ineffectiveness of the defense attorney who represented him at sentencing," *i.e.*, Behesnilian, and we "express[ed] no opinion about whether [Kroytor] could seek relief based on the representation he received from any other attorney." *Id.* at 963 n.4.

### III. Kroytor again requests coram nobis relief, and the district court dismisses his second petition.

In late April 2021, Kroytor hired another criminal attorney and then filed a second petition for coram nobis in October 2021. He now claims he suffered ineffective assistance of counsel from three attorneys: (1) Behesnilian, who allegedly told him that paying restitution would likely avoid removal, (2) Graysen, who supposedly "affirmatively misadvised" Kroytor about the immigration consequences of pleading guilty, and (3) Blackmon, who delayed filing Kroytor's first coram nobis petition. Of these three attorneys, only Behesnilian is still living.

The district court dismissed Kroytor's second petition, finding it barred under the doctrine of laches. The district court held that Kroytor's delay prejudiced the government because Graysen and Blackmon have passed away and evidence related to the health care fraud charge has been destroyed. The court concluded Kroytor did not meet his burden to show that he exercised reasonable diligence in filing because he failed to (1) seek post-conviction relief between 2007 and 2014 after authorities at the border informed him that his conviction made him inadmissible, and (2) exercise reasonable diligence in waiting a year after our decision in *Kroytor I* to file a claim implicating Blackmon. Kroytor now appeals.

## STANDARD OF REVIEW

We review a district court's dismissal of a coram nobis petition on the basis of laches for abuse of discretion. *See Telink, Inc. v. United States*, 24 F.3d 42, 47, 47 n.10 (9th Cir. 1994). Abuse of discretion occurs only "if the district court bases its decision on an erroneous legal standard or on clearly erroneous findings of facts." *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018) (citation omitted).

## DISCUSSION

### I.  The district court properly held that laches bars Kroytor's second coram nobis petition.

Coram nobis is an extraordinary remedy that allows a court to correct an error in light of new evidence. *United States v. Morgan*, 346 U.S. 502, 511 (1954). Unlike a habeas petition, coram nobis relief is available to a person who is not detained by the government.

One of the defenses to a coram nobis petition is the equitable doctrine of laches. *United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007). When invoking laches, the government must first show that unreasonable delay prejudiced the government. *Id.* at 1008. Both the government's ability to respond to the coram nobis petition and to mount a retrial are relevant factors in the prejudice analysis. *Telink, Inc. v. United States*, 24 F.3d 42, 48 (9th Cir. 1994). Once the government shows it has suffered prejudice, the burden then shifts to the petitioner to either rebut the government's claim of prejudice or show the delay fell within the petitioner's "exercise[ of] reasonable diligence" in filing the claim. *Riedl*, 496 F.3d at 1008. If the petitioner cannot do either, his coram nobis claim fails. *Id.*

## A. The government made an unrebutted prima facie showing of prejudice.

The government satisfied its burden to show prejudice in two ways.

First, the deaths of key witnesses—two of Kroytor's attorneys who allegedly provided ineffective assistance of counsel—create a prima facie showing of prejudice. *Cf. Telink*, 24 F.3d at 48 (finding that the government was prejudiced by the death of a witness). Kroytor offers his version of conversations with attorneys Blackmon and Graysen. But neither Blackmon nor Graysen is available to share their side of the story, including offering plausible alternative explanations, more context, or rebuttals. And not only are the attorneys unavailable, but Graysen's records have since been destroyed and the status of Blackmon's records is unknown.

Second, the government makes another, independent prima facie showing of prejudice because it faces obstacles in mounting a re-prosecution over twenty years after Kroytor's original conviction. Because of the passage of time, evidence of Kroytor's health care fraud may be lost or unavailable. The government, for example, had interviewed numerous doctors and patients, many of whom may not be easily found, may be deceased, or have faded memories. *Cf. Telink*, 24 F.3d at 48 (affirming prejudice because the government could have preserved its case but for the petitioner's delay); *Riedl*, 496 F.3d at 1008 (holding unavailability of evidence prejudiced government).

Kroytor responds that the government may still notch a conviction at retrial because it could rely on other evidence. But the government need not show that it would lose at retrial to show prejudice; it only needs to show that lack of certain evidence would "hamper the government's ability to prove" its claims. *Riedl*, 496 F.3d at 1008. The government has met that bar. Kroytor also half-heartedly argues the prosecutor involved in Kroytor's plea negotiations might be able to fill in some of the missing details related to his ineffective assistance of counsel claim. But the prosecutor could not testify about any conversations that Kroytor had with his attorneys outside the prosecutor's earshot.

## B. Kroytor did not exercise reasonable diligence.

We also hold that Kroytor failed to show reasonable diligence in filing his coram nobis petition—given that he was put on notice in 2003 and 2007 that his conviction could make him removable.

Kroytor relies on *United States v. Kwan* to argue that his delay was "reasonable." 407 F.3d 1005 (9th Cir. 2004). We concluded there that a petitioner's near six-year delay in

attacking his conviction from the time of his guilty plea did not defeat his claim to coram nobis relief, ruling that "[t]he law does not require [a petitioner] to challenge his conviction at the earliest opportunity" but merely "requires [him] to have sound reasons for not doing so." 407 F.3d at 1011, 1014. When he pleaded guilty, Kwan's defense counsel allegedly advised him that removal on account of his conviction was "not a serious possibility." *Id.* at 1008. But in 1996, within months of his conviction, the government issued Kwan a Notice to Appear. *Id*. at 1008-09. His immigration lawyer advised him that he was not likely deportable—and the immigration judge agreed, finding that his conviction was not an aggravated felony. *Id.* at 1009. But in February 2001, after the government issued Kwan a second Notice to Appear, a different immigration judge ruled that Kwan's conviction *did* qualify as an aggravated felony. *Id.* Shortly after, Kwan petitioned for coram nobis relief. *Id.* Kroytor contends that his situation is like Kwan's because his attorney at first dismissed the serious possibility of removal, telling Kroytor "not to worry" about it.

The district court distinguished *Kwan*, reasoning that Kwan's attorney affirmatively advised him not to file for habeas relief while he challenged his removability (while Kroytor's lawyers did not tell him to forgo collateral relief). We disagree with this reading of *Kwan*. Nothing in *Kwan* suggests that his attorney expressly told him not to seek post-conviction relief; Kwan's attorney, like Kroytor's, was silent about seeking this avenue of relief. 407 F.3d at 1013.

But *Kwan* still does not help Kroytor. Contrary to Kroytor's suggestion, *Kwan* does not stand for the broad proposition that a delay in seeking coram nobis relief is de facto "reasonable" just because the petitioner claims he relied on counsel's advice. A petitioner still must show that

he had "sound reasons" for the delay based on all the facts. *Id.* at 1014. In *Kwan*, we held that Kwan had "sound reasons" for his delay in filing for post-conviction relief because an *immigration judge* at first confirmed that his lawyer's advice was correct—Kwan's deportation was not a "serious possibility" because his conviction was not an aggravated felony. *See id.* at 1008. It was only after a second immigration judge determined that Kwan had committed an aggravated felony that Kwan had "reason to conclude that his criminal defense counsel had in fact erred . . . by advising him that there was 'no serious possibility' of deportation." *Id.* at 1014. And once Kwan learned that his attorney may have been mistaken, he immediately sought post-conviction relief.

In contrast, Kroytor did not have any comparably "sound reasons" to justify his tardiness in filing his coram nobis petition. No judge, immigration or federal, told him that he could not be removed or confirmed his lawyer's errant advice. To the contrary, the district court judge in 2003 asked Kroytor whether he understood that pleading guilty would make him removable from the United States—and Kroytor responded "yes." Then in 2007, U.S. immigration authorities at the border again told him that his conviction rendered him inadmissible to the United States. This encounter with immigration authorities in 2007, in particular, specifically contradicted Behesnilian's assurances that if Kroytor paid his restitution in full, immigration authorities would not find out about his conviction. Even assuming Kroytor's attorneys provided inaccurate or incomplete advice, Kroytor was put on notice in 2003 (by a federal judge) and in 2007 (by an immigration official) that he could be removed based on his conviction, and at least by 2007 he knew or had reason to question his

counsel's advice otherwise. In sum, laches applies because Kroytor did not exercise reasonable diligence in seeking relief.

In light of Kroytor's delay between at least 2007 and 2014, we have no occasion to consider whether Kroytor additionally delayed in pursuing his second coram nobis petition after our decision in *Kroytor I*. Finally, although Kroytor notes our remark in *Kroytor I* that "[w]e do not doubt that Kroytor was earnest in trying to resolve his problem," 977 F.3d at 963, that observation does not resolve this case in Kroytor's favor. That Kroytor may have been earnest in trying to resolve his problem does not mean he pursued the relief at issue here with reasonable diligence.

We **AFFIRM** the denial of Kroytor's petition for coram nobis.