Filed 5/12/23  P. v. Daniels CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PAUL STEWART DANIELS,<br><br>        Defendant and Appellant. | A164354<br><br>(Alameda County<br>Super. Ct. No. H53179B) |

Paul Stewart Daniels (appellant) appeals from the trial court's order vacating an earlier order.  We affirm and remand for further proceedings.

BACKGROUND

In 2014, appellant was convicted of two felonies and sentenced to probation.[1]  He and a codefendant, Nanette Dillard, were jointly and severally ordered to pay more than $300,000 in restitution to the victim, the Department of Health and Human Services Administration of Children.

In 2018, this court reversed appellant's convictions and all but one of Dillard's convictions as preempted by federal law.  (*People v. Dillard* (2018)

---

[1] The facts underlying the convictions are not relevant to this appeal.

1

21 Cal.App.5th 1205.) On remand, appellant filed a motion seeking the return of approximately $2,500 he had paid in victim restitution; he also sought an exoneration order, the removal of his DNA from the state databank, and sealing of his arrest records. With respect to the repayment of restitution, appellant's motion did not specify which entity should repay him, but the proposed order submitted with his motion was directed to "the Alameda County Probation Department." Appellant served, among other recipients, "Alameda County Probation Administration."[2] Dillard also requested repayment of victim restitution she had paid, among other relief.

The motions were heard in July 2018 before Judge Allan Hymer. Counsel appeared for appellant, Dillard, and the district attorney. With respect to the restitution repayment requests, the prosecutor represented that the money paid by appellant and Dillard "has been already disbursed to the Department of Health and Human Services."[3] When appellant's counsel

---

[2] Appellant filed his motion papers twice; only the second filing served Alameda County Probation Administration. The second filing also identified a slightly different amount that appellant had paid in victim restitution.

[3] Victim restitution funds received by a probation department must be disbursed to the victim within statutorily specified time frames. (Pen. Code, § 1203.1, subd. (b) ["Any restitution payment received by a court or probation department in the form of cash or money order shall be forwarded to the victim within 30 days from the date the payment is received by the department. Any restitution payment received by a court or probation department in the form of a check or draft shall be forwarded to the victim within 45 days from the date the payment is received, provided, that payment need not be forwarded to a victim until 180 days from the date the first payment is received, if the restitution payments for that victim received by the court or probation department total less than fifty dollars ($50). In cases where the court has ordered the defendant to pay restitution to multiple victims and where the administrative cost of disbursing restitution payments to multiple victims involves a significant cost, any restitution

2

argued failing to return the money would violate appellant's constitutional rights, Judge Hymer responded, "Well, I think so, but am I the proper Court to bring the claim to? In other words, it seems to me if -- well, if either the federal government has wrongfully received the money, then you make a claim against the federal government. [¶] If your claim is that the probation department has wrongfully disbursed the money, then you make your claim civilly to the probation department." Judge Hymer continued, "I just know of no authority that gives me jurisdiction to order repayment of restitution that has already been paid. [¶] If you got a case showing me otherwise, I'd be glad to change my mind." Appellant's counsel responded, "I do not at present, Your Honor." Judge Hymer then ruled, "I'm not going to make an order with regard to that $2,650 as to either Ms. Dillard or [appellant]." The court set a continued hearing date on appellant's requests to remove his DNA from the state databank and seal his arrest records, to allow time for compliance with procedural requirements. For reasons that are not clear from the record, the continued hearing was dropped from the calendar and not rescheduled.

Three written orders issued after the July 2018 hearing. One is a minute order containing a stamped certification by the clerk dated the date of the hearing, July 27, 2018. This minute order states, "The Court makes no finding regarding defendant[']s request for monies previously paid towards restitution;" similarly, with respect to Dillard, the minute order states the court "makes no ruling regarding" the restitution repayment request. The second written order is a minute order from the same hearing, with no

payment received by a probation department shall be forwarded to multiple victims when it is cost effective to do so, but in no event shall restitution disbursements be delayed beyond 180 days from the date the payment is received by the probation department."].) All undesignated section references are to the Penal Code.

certification stamp and with a header date of July 18, 2019, nearly a year after the hearing. This minute order states, as to appellant, "The Court denies request to return money previously paid towards restitution." The last is a signed written order prepared by Dillard's counsel and stamped as filed on the date of the hearing, July 27, 2018. Judge Hymer crossed out language in the proposed order ordering previously paid restitution be returned to Dillard, and added no additional language regarding that request.

More than two years later, on November 23, 2020, a written order prepared by appellant's counsel was signed by Judge Hymer and filed (hereafter, the 2020 Order). The 2020 Order provides, in relevant part, "**WHEREAS** Paul Daniels made restitution payments totaling $2,671.00 to the County of Alameda before his conviction was overturned. [¶] **WHEREAS** On October 10, 2020, Mr. Daniels received a letter demanding further restitution payments in the amounts of $434.24 and $635.00 to the State of California Franchise Tax Board . . . . [¶] **IT IS HEREBY ORDERED** that, pursuant to California Penal Code § 1262, The County of Alameda shall re-pay to PAUL DANIELS the sum of $2,671.00.[4]"

A year later, in November 2021, Alameda County (the County), represented by county counsel, filed a motion to vacate the 2020 Order.[5] The

---

[4] This was the amount identified in appellant's second 2018 motion; however, at the 2018 hearing, appellant's counsel stipulated that the amount paid was sixteen dollars less, or $2,655.

[5] The memorandum filed in support of the motion represented that "Counsel for the County did not become aware of the [2020] Order until September 23, 2021." At the hearing, appellant's counsel represented that appellant brought the order "to the County of Alameda Probation Department within weeks of the signing of the order in 2020 and said I paid

4

motion argued the 2020 Order violated due process because neither the County nor the People were afforded notice or an opportunity to be heard before it issued; section 1262 did not authorize the return of victim restitution funds already paid to the victim; and the order granted relief that was previously denied by the court in July 2018. A declaration accompanying the motion averred that, "under some circumstances, the County of Alameda agrees to act as a conduit of victim restitution payments made by criminal defendants to the corresponding victims who are entitled to receive those funds from those defendants. For those victim restitution orders for which the County acts as such a conduit, it typically receives such victim restitution payments and transfers them on to the victim at his or her address on file within a month or two of receiving such payments." The declaration further averred the County received $2,655 from appellant in victim restitution payments and all funds were transferred to the Department of Health and Human Services on or before May 25, 2018.

The County also filed a request for judicial notice of various records, including records from a federal lawsuit appellant and Dillard filed in February 2019 against the County and other defendants, alleging the defendants criminally prosecuted appellant and Dillard in retaliation for their criticism of County officials (42 U.S.C. § 1983), and seeking five million dollars in compensatory damages. The records showed the federal district court granted the County's motion to dismiss the lawsuit in December 2019,

---

you this money, there's a court order that says give it back, I'd like it back. And they simply refused." County counsel represented, "This is my first notice that this order was ever presented to anyone at the County prior to the time that I was notified of it."

the Ninth Circuit affirmed in January 2021, and the United States Supreme Court denied certiorari in October 2021.

Appellant opposed the County's motion to vacate the 2020 Order. The opposition memorandum represented: "In November 2020, an exasperated and desperate Mr. Daniels wrote a letter to Judge Hymer (who had sat on his trial and presided over the July 27, 2018 hearing) to inform him that despite the fact that his conviction was overturned and that he was ordered released from all fines and restitution by the court, the Alameda County was nevertheless attempting to use the California Franchise Tax Board to garnish his wages and freeze his accounts in order to collect money they were not owed. . . . In response to this letter, Judge Hymer emailed defense counsel Brendan Hickey requesting he prepare an order to provide Mr. Daniels the requested relief. Mr. Hickey did so at the judge's request, and the judge signed the order *sua sponte* without motion or hearing." In addition, for the first time, appellant relied on *Nelson v. Colorado* (2017) 581 U.S. 128 (*Nelson*) to argue he was constitutionally entitled to repayment of restitution. (See *id.* at p. 130 ["When a criminal conviction is invalidated by a reviewing court and no retrial will occur, is the State obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction? Our answer is yes."].)

The motion to vacate was heard before Judge James Cramer because Judge Hymer was retired and therefore not available. At the beginning of the hearing, Judge Cramer stated that "restitution paid pursuant to a criminal conviction . . . should be returned to the person whose conviction has been set aside," but continued, "the question still here is how he should get that money back, and who he should get that money back from in a case like this." At the conclusion of the hearing, Judge Cramer ruled, "I am concluding

6

that Judge Hymer's ex parte order was improper, and it was an ex parte order ordering a non party to the action before him to do something," and "Judge Hymer did not have jurisdiction over the County without some notice to the County before that order was issued." The court granted the County's motion to vacate the 2020 Order. This appeal followed.

## DISCUSSION

The People, as respondent, "agree that appellant has a constitutional right to repayment of the victim restitution sums he has already paid." They argue the 2020 Order was nonetheless void because (1) Judge Hymer improperly reconsidered his 2018 final order denying restitution repayment; and (2) because Judge Hymer lacked jurisdiction to order repayment from the County, a nonparty to the criminal action with no notice or opportunity to be heard on the issue. The County, in an amicus brief, agrees with the People and additionally argues the 2020 Order was erroneous because the County, having passed on appellant's restitution payments to the victim, is not responsible for the repayment of such funds.

We begin by considering whether the 2020 Order improperly reconsidered a prior final order. The parties point to the conflicting minute orders from the July 2018 hearing—one making "no finding" as to appellant's restitution repayment request and the other "den[ying]" the same request— in arguing whether Judge Hymer issued a tentative ruling or a final one. "As a general rule, a record that is in conflict will be harmonized if possible. [Citation.] If it cannot be harmonized, whether one portion of the record should prevail as against contrary statements in another portion of the record will depend on the circumstances of each particular case." (*People v. Harrison* (2005) 35 Cal.4th 208, 226.)

7

The minute order making no finding on the restitution repayment request bears a certification stamp dated the day of the hearing; in contrast, the minute order denying the request contains a header indicating it was generated or printed nearly a year after the hearing. These circumstances indicate the former order is more reliable as an accurate representation of the court's order. The minute order making no finding is also not inconsistent with other portions of the record. In the proposed order prepared by Dillard's counsel and signed by Judge Hymer at the July 2018 hearing, Judge Hymer crossed out proposed order language granting restitution repayment but did not add language denying the request. In Judge Hymer's oral statements at the hearing, he indicated his uncertainty about whether he had jurisdiction over the matter and concluded that he was "not going to make an order with regard to that $2,650 as to either Ms. Dillard or [appellant]." Although the People argue Judge Hymer's comment that he was "not going to make an order" demonstrates his intent to deny the request, the comment could also be indicative of an intent to leave the request pending.

We acknowledge this is an extremely unusual situation. In general, trial courts do not and should not leave requests pending for two years. However, given the unique facts presented here—including the constitutional rights at issue, Judge Hymer's expressions that appellant should obtain relief but uncertainty about the appropriate forum, and the circumstances indicating the minute order making no finding accurately represented Judge Hymer's ruling—we conclude Judge Hymer did not issue a final decision on appellant's repayment request following the July 2018 hearing. Accordingly, when the 2020 Order issued, Judge Hymer had issued only a tentative ruling and had jurisdiction to reconsider it. (*Paul Blanco's Good Car Company Auto Group v. Superior Court of Alameda County* (2020) 56 Cal.App.5th 86, 97

8

(*Paul Blanco's*) ["As a general rule, trial courts have inherent jurisdiction to reconsider, vacate, or otherwise modify their interim orders."].)

Was the 2020 Order nonetheless void because it ordered a nonparty to pay appellant without notice and an opportunity to be heard? We agree with the People and the County that the County is not a party to the criminal proceedings. "The parties to a criminal action are the People, in whose sovereign name it is prosecuted, and the person accused." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451.)

To be sure, county officers perform various functions on behalf of the state with respect to criminal proceedings. (See Gov. Code, § 26500 [district attorney "shall initiate and conduct on behalf of the people all prosecutions for public offenses."]; Gov. Code, § 27771, subd. (a)(4) ["The chief probation officer shall perform the duties and discharge the obligations imposed on the office by law or by order of the superior court, including" "Community supervision of individuals subject to probation pursuant to conditions imposed under Section 1203 of the Penal Code."]; § 1202.8, subd. (a) ["Persons placed on probation by a court shall be under the supervision of the county probation officer who shall determine both the level and type of supervision consistent with the court-ordered conditions of probation."].)

However, appellant fails to establish that either these functions performed by county officers, or counties' status as "subdivisions" of the state (Gov. Code, § 23002), effectively transform the *county itself* into an alter ego of the state for purposes of a criminal proceeding. (See *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 345 ["the district attorney represents the state, not the county, when preparing to prosecute and when prosecuting crimes"]; *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491, fn. 12 ["While it has been said that counties are not municipal corporations but are

9

political subdivisions of the state for purposes of government [citations], counties have also been declared public corporations or quasi-corporations."]; see also *Moor v. County of Alameda* (1973) 411 U.S. 693, 719 ["[A] detailed examination of the relevant provisions of California law—beyond simply the generalization contained in Art. 11, § 1, of the state constitution—convinces us that the County cannot be deemed a mere agent of the State of California."].)

Since the County was not a party to the criminal proceeding, did the trial court have personal jurisdiction over the County at the time of the 2020 Order? One of the requirements for establishing personal jurisdiction is "sufficient notice and an opportunity to be heard." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1439, fn. 13.) We reject appellant's contention that the trial court had personal jurisdiction over the County by virtue of the filing of the criminal complaint by the County district attorney. "[A]n action brought in the name of the People of the State of California, as a party, is not brought by a county, or other local agency, and the district attorney, as the legal representative, is not a party thereto." (*GameStop, Inc. v. Superior Court* (2018) 26 Cal.App.5th 502, 511.). Appellant also argues the County received notice because he served his 2018 motion on "Alameda County Probation Administration." Assuming service of the original motion was sufficient to establish personal jurisdiction for the 2020 Order, appellant fails to provide argument or authority that service on "Probation Administration" was sufficient to constitute service on the County. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 ["it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court

committed an error that justifies reversal"]; *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."]; see also *Johnson v. San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 697 [for claims pursuant to the California Tort Claims Act (Gov. Code, § 900 et seq.), " '[t]he doctrine of substantial compliance is not applicable to a claim which is addressed to the wrong *entity*' "].)

"A trial court lacks jurisdiction in the fundamental sense where there is ' . . . an absence of authority over . . . the parties.' " (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538.) " '[A] collateral attack on a final judgment may be made at any time when the judgment under challenge is *void* because of an absence of "fundamental jurisdiction." ' " (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339.) Because the trial court lacked personal jurisdiction over the County, the 2020 Order was subject to collateral attack at any time; for the same reason, the 2020 Order was improper and Judge Cramer did not abuse his discretion in vacating it. We will therefore affirm Judge Cramer's order.

However, because we conclude the repayment issue was not finally decided in July 2018, the issue will remain at large on remand.[6] We note the United States Supreme Court's pronouncement that, "To comport with due

---

[6] Because Judge Hymer is retired, his tentative ruling may be reconsidered by a different bench officer. (*Paul Blanco's, supra,* 56 Cal.App.5th at p. 100 ["[T]he superior court's jurisdiction to reconsider its rulings is generally to be exercised by the judge who made the original order. [Citation.] [¶] A narrow exception to this venerable rule applies when the record shows that the original judge is no longer 'available.' [Citation.] The unavailability of the original judge is established if, for example, the judge has retired."].)

process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." (*Nelson, supra,* 581 U.S. at p. 139.) Although not expressly addressed in the Supreme Court opinion, the appealed-from state court opinions make clear that in the consolidated Colorado cases, as here, the restitution funds paid by the defendants had already been paid to the victims. (*People v. Nelson* (Colo. 2015) 362 P.3d 1070, 1074 ["Of the total amount that Nelson paid, $414.60 was disbursed to the victims as restitution."], revd. and remanded *sub nom. Nelson,* 581 U.S. 128; *People v. Madden* (Colo. 2015) 364 P.3d 866, 867–868 ["The restitution money . . . had been paid to the counseling service that the victim used and could not be returned."], revd. and remanded *sub nom. Nelson,* 581 U.S. 128.) The fact of this prior payment to the victims did not alter the high court's holding that the state was required to repay the defendants.[7]

---

[7] On this issue, the Colorado Court of Appeals reasoned: "In reaching conclusion here, we are not unmindful of the fact that in certain cases, the state may be required to refund monies that it has already disbursed to third parties (i.e., people and entities not controlled by the state). For several reasons, however, we believe that such a result is reasonable and appropriate. ¶ 29 First, it was the state's action that ultimately resulted in the wrongful payment of restitution. ¶ 30 Second, when the state chose to disburse the funds, it necessarily assumed the risk that the conviction could ultimately be overturned. ¶ 31 Third, we do not believe it appropriate to create a scenario in which former criminal defendants are left to seek out and file lawsuits or other proceedings against third parties, and especially crime victims, to recover the restitution amounts that the defendants previously paid. ¶ 32 Fourth, when a former defendant seeks a refund from the state, there is nothing to preclude the state, in its discretion, from seeking to recover such restitution amounts from the third parties, and we view this as a more palatable option, given that the state would have had prior dealings with the victims and any service providers. In addition, the state would be in the best position to assess whether the amount of the restitution at issue or

*Nelson* indicates the state is the entity properly obligated to repay the defendant, and does not suggest a different outcome where, as here, a different entity performs the actual collection of restitution on behalf of the state. Appellant's 2018 motion requested the court "[o]rder the immediate return of" restitution paid by appellant without specifying what entity should be so ordered, although the proposed order attached to the motion ordered relief from "the Alameda County Probation Department." The People concede that, if the matter is remanded, the trial court will have the authority "to determine from whom appellant may collect the victim restitution he has paid." Accordingly, on remand, the trial court shall determine, among other issues raised by the parties, whether the state should be ordered to repay victim restitution paid by appellant.

## DISPOSITION

The order is affirmed and the matter is remanded for further proceedings.

---

the impact on the victims or service providers justifies any effort to recover such funds. ¶ 33 Finally, in a situation like that present here, where either the former defendant or the state must bear the risk of a wrongly paid restitution award, we believe that the risk should rest with the state, which collected the restitution funds but then ultimately failed to prove its case and which would likely be better able to bear the risk." (*People v. Nelson* (Colo. App. 2013) 369 P.3d 625, 630–631, revd. (Colo. 2015) 362 P.3d 1070, revd. and remanded *sub nom. Nelson, supra,* 581 U.S. 128.)

                                                     SIMONS, Acting P. J.

We concur.


_____

BURNS, J.



_____

LANGHORNE, J.[*]



(A164354)

---

[*] Judge of the Napa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.